UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

United States of America, Plaintiff,

vs.

Peter Biar Ajak, Defendant.

2:24-cr-00394-SPL-2

Phoenix, Arizona
March 15, 2024
1:32 p.m.

BEFORE: THE HONORABLE EILEEN S. WILLETT, MAGISTRATE JUDGE

TRANSCRIPT OF PROCEEDINGS

Arraignment and Detention Hearing

APPEARANCES:

For the Government:
U.S. Attorney's Office
By: RAYMOND K. WOO, ESQ.
AMY CHANG, ESQ.
DAVID A. PIMSNER, ESQ.
40 North Central Avenue, Suite 1200
Phoenix, AZ 85004

For the Defendant Peter Biar Ajak:
Kurt M. Altman PLC
By: KURT MICHAEL ALTMAN, ESQ.
12621 N. Tatum Blvd., #102
Scottsdale, AZ 85032

Transcriptionist:
Elva Cruz-Lauer
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc. 33
Phoenix, Arizona 85003
(602) 322-7261

Proceedings Recorded by Electronic Sound Recording
Transcript Produced by Transcriptionist

P R O C E E D I N G S

THE CLERK: Case number CR 24-394, United States of America versus Peter Biar Ajak.

Before the Court for arraignment and a detention hearing.

MR. WOO: Your Honor, Ray Woo, Amy Chang, and Dave Pimsner. We're here to represent the United States. Good afternoon.

THE COURT: Good afternoon, Counsel.

MR. ALTMAN: And good afternoon, Your Honor, Kurt Altman on behalf of Mr. Ajak, who is present next to me and in custody.

THE COURT: Good afternoon, Mr. Altman.

Good afternoon, Mr. Ajak.

We are here for arraignment first. Go right ahead, Mr. Altman.

MR. ALTMAN: Thank you, Judge. We have -- I have gone over the formal indictment with Mr. Ajak. His name is spelled correctly, Your Honor.

We will waive its formal reading and today enter pleas of not guilty to each count and a denial of the forfeiture allegation.

THE COURT: Pleas of not guilty and denial of the forfeiture allegation are hereby entered into the record.

It's ordered setting a deadline of 21 days for

pretrial motions. Counsel, I have a firm trial date.

Sir, it is going to be Tuesday, May 7th, 2024, at 9:00 a.m. Your Judge, sir, is Judge Logan, and he will be in Courtroom 501, Counsel.

We are also here today for a detention hearing. The Court did receive and review the Pretrial Services report, the government's detention memoranda, Document 22, and also I received the defendant's detention memoranda as well. I don't have the document number for that, but I did get it. This is not a presumption case.

Go right ahead, Mr. Woo.

MR. WOO: Thank you, Your Honor. Your Honor, the seriousness of the charges in this case cannot be overstated.

The defendant, Mr. Ajak, led a scheme to arm opposition forces with high-powered weapons with the hope they would lead to armed conflict with government forces, allowing him to take power to become the new leader of South Sudan. Those are very serious charges.

The government believes he is a flight risk for the following reasons: First, the only reason Mr. Ajak is here in this court today is because he came here to finalize the weapons purchase with government agents, undercover agents. He has no ties to the District of Arizona.

Mr. Ajak has strong ties, however, to foreign individuals. For example, he has a daughter in Belgium. He

has relatives in South Sudan. He has siblings in Canada, Australia, and India.

The defendant has means, the means to live abroad if he were to flee. He currently owns a residence in Kenya. And in this case, the defendant had access to a funding source.

As noted in the government's complaint, the defendant received over $8 million from a source to fund this scheme.

Of particular note, days before the time that Mr. Ajak came to Arizona, he received $50,000 from that source through a wire into his personal account.

The government believes that defendant has access to funds that could potentially fund his flight from the United States. Those funds would be outside of the Court's visibility and supervision.

As also part of the plan, for Mr. Ajak, to leave the United States. He is currently on asylee status. As he admitted to government agents on the day of arrest, his plan was to leave his status in the United States so that he could lead the efforts in South Sudan.

Additionally, there's also facts about the schemed export that suggest defendant will not abide by any of the Court's conditions.

Those facts involve the deception used to conceal the scheme itself. For example, purchase documents for the weapons were signed by the defendant. The defendant also signed fake

documents that claimed the transaction was for a -- humanitarian purposes.

The payments coming into the accounts were disguised as they were named for other things. For example, "humanitarian aid."

The defendant, along with his coconspirators and collaborators, used deliberately an encrypted platform to communicate with each other. And through this scheme, money transfers were made through intermediary accounts to conceal the original source and the purpose of the money.

In addition to all of that, the potential punishment faced by the defendant in this case is a strong motivator for him to flee. He is facing up to 20 years in prison if convicted on several of the counts.

Based on these reasons, Your Honor, the government believes the defendant is a flight risk, and that there are no conditions or combination of conditions that could reasonably assure his appearance in court.

The government also believes the defendant is a danger to the community. Now, we are not saying he's a danger to the community here in Arizona, which he does not live.

But he is a danger to the community in South Sudan, as part of the scheme was to export millions of dollars of military-grade weapons, Stinger missile systems, hundreds of grenades, hundreds of automatic weapons, anti-tank weapons,

sniper rifles.

These are, Your Honor, weapons of war, and they were sent, or attempted to be sent, to facilitate an armed conflict. And in any conflict, there will always be collateral consequences to the civilian population, which includes death.

But there was a more nefarious purpose of or nefarious means of this scheme, in that when Mr. Ajak was describing to the agents, it was their hope that protestors would take to the streets, inciting government forces to use lethal force against them, thereby leading to an armed uprising.

I respectfully submit to the Court that gaining power by causing the death of innocent civilians is outrageous and clearly a danger to the South Sudanese community, and is a basis for detention in this case.

And for those reasons, I would ask that the Court detain Mr. Ajak pending trial.

Thank you.

THE COURT: Thank you, Mr. Woo.

Mr. Altman.

MR. ALTMAN: Thank you, Judge. Before I get into what I believe the law requires the focus of detention to be, I want to address a couple of other things that the government just said.

Yes, there were a couple of accuracies there. He has no current ties to Arizona, Judge, but he does currently live

and rent a house where he has been since he was granted asylum status in Maryland.

He lives there with his wife and four children. The four children live with him. The daughter that the government referenced that lives in Europe, he does not have contact with.

In addition to that, obviously Mr. Ajak has a significant amount of community support, as you can see in the back of the courtroom.

People have flown in from all over North America -- I was going to say all over America, but North America, to be here today to show support for this and Mr. Ajak.

The government relies, Your Honor, on the allegations. Again, I know that I put that in the memo, but it goes, I think it's important to say again, that their reasoning for asking for detention is because the case is so bad. Well, this is still a case that has been unproven. This is a case that -- we've only seen the complaint, Judge.

Mr. Woo talks about what he said to authorities. We haven't seen that. We don't know the circumstances of that. We don't even know if he did talk to authorities.

We have not received discovery, not that we are entitled to it, but we are kind of fighting an uphill battle to address those allegations.

They are not facts. This Court certainly should consider them, but not give them great weight at this time.

They talk about his access to funding, Judge. If that were the case, there are ways to limit that. But I'll tell this Court that's not the case. I think they just said that they believe he could potentially fund his flight.

I mean, "believe he could potentially fund his flight," isn't really evidence that this Court should rely on to detain Mr. Ajak.

And as far as a danger, Judge, again, they just revert back to the allegations in the complaint.

Again, I am not going to sit here and say, yeah, the allegations are not serious. But they are completely and utterly unproven. They were written by an agent based on their version of events.

I am sure that discovery, when it starts coming in, is going to be voluminous, and there is going to be a lot more to it than what you see in the complaint that are, again, allegations.

As far as what we would ask this Court to focus on, as far as detention, one, his history, his characteristics, his ability to flee, or inability to flee, and the fact that he is a family man.

Judge, as I've said, his wife, his sister, who is a U.S. citizen, and his mother are all in the courtroom today. His sister -- his wife, as well, but his sister is willing to be a third-party custodian for Mr. Ajak.

Certainly, Mr. Ajak's whereabouts can be known at all times by GPS monitoring. He has been in this country since 2020. He is on asylum status and cannot leave the country and keep that status.

And he is on asylum status because he is -- "famous" is probably the wrong word, but he is well known throughout the world. He's listed as a renown lecturer and fellow at Harvard.

He is a peace activist. He works for renewed democracy. He works towards bringing freedom to societies here in America.

He has no ability to flee, not only because asylum, but because he doesn't have a passport. Your Honor, the government issued a search warrant the day of Mr. Ajak's arrest. They confiscated his South Sudanese passport. It's the only passport he has.

So he would not be able to leave the country anyway without travel documents, and he certainly would not be able to leave the country without -- or with a GPS monitoring, if this Court sees that as a fitting condition.

Mr. Ajak is also connected at the highest levels of our government, Judge. He has dinners with -- not that this is impressive, but he has dinners with ambassadors.

He works with the State Department. He has worked with them for years and years on many things, and much of that we are certain will come to light as this case moves along, and

the knowledge of the U.S. government, some of the allegations in this complaint.

He has a remarkable history, Judge. As you've seen, he's been a political prisoner. He served solitary confinement in South Sudan, and there are literally hit squads, murder warrants, whatever you want to call them, on his head around the world.

The only place that Mr. Ajak is safe is in the United States, and he would not flee. He would be willing to stay here in the District of Arizona for his release. Of course he'd like to go home to Maryland and travel back and forth, but he would do whatever this Court required.

Again, I think today there's a film crew here, not filming in the courthouse of course, following him. There's people writing about him. He is a person that cannot escape from people, so that ensures this Court, helps assure this Court, that Mr. Ajak can't go anywhere.

He has got to be here, and in fact he wants to be here, Judge. He wants to answer these charges. He wants it to be known that he is not guilty of these charges and that we are going to take it as far as we can to vindicate him and make sure that, you know, justice is done in this case, Judge.

He is in no way desirous or in no way has the ability to leave the United States. Every single person in the back of the courtroom would ensure that he comes back. He is an

intelligent man, Judge, and he looks forward to moving this case along as fast as possible and returning to the court so this terrible beginning comes to an end.

Judge, we don't think that he is a flight risk. We don't think the government has met their burden by a preponderance in that case or by clear and convincing evidence, basically relying on the complaint to say he is a danger, Judge.

We would ask that you release him OR. There are conditions, as the Pretrial Services report indicated, that can even assure this Court in greater detail, that can be GPS, that can be third-party custodian, that can be a lot of things, Judge, and you can restrict his telephone use, his computer use, whatever is necessary in order for him to be released.

This is a complicated and obviously very big case, Judge. And although this isn't a factor the Court is required by law to consider, it's also a difficult case to defend when there's a defendant, that will not flee, two and a half hours or two hours south of Phoenix in custody, and that's the only way his lawyers and his team can talk to him.

We would ask that he be released. Mr. Ajak will assure this Court and sign any conditions necessary to satisfy this Court that he will appear and he will be here for every court date. So we would ask that you not detain him.

THE COURT: Thank you, Counsel.

And the government.

MR. WOO: Thank you, Your Honor. Your Honor, in every detention hearing usually it's at the very beginning of the case and allegations at that point have not been proven to a jury, that is true.

But the Court, under the statute, and as I have presented to the briefing, is required to consider the nature and the circumstances of the offense, and those have been laid out.

The Court can also consider, although it's not an important fact, the weight of the evidence. And as the government's proffer to the Court in its briefing, and I am going to proffer to the Court now, the meetings with the defendant were all audio and visual -- audio recorded at the very least. Some were even video recorded as well.

There's the point on, you know, the defendant does not want to leave because he has asylum status. There are these hit squads. What I would say to that is, he is a well-known public figure, as they have pointed out.

If he was truly concerned about hit squads, I think he would have done a better job of not being such a well-known public figure. As part of the plan and the scheme that he led, he was planning on leading.

Once the weapons in this, you know, incitement occurred, his plan was to leave, as he told agents, the United

States and his immigration status, so he can lead this scheme.

I would simply ask that the Court consider what we've presented in the briefing and what we've argued today. I will emphasize that the danger to the community, as posed by this scheme he tried to perpetrate, was real.

It placed the South Sudanese community at great risk. And if he were released on conditions, there's no way that every means that Mr. Ajak could potentially use to communicate with these foreign collaborators could be monitored and stopped. So that's why the government is recommending to the Court to detain Mr. Ajak pending trial in this case. Thank you.

THE COURT: Thank you, Counsel.

The matter is being submitted for my decision. I will take the matter under advisement and consider carefully all of the proffers of counsel.

Sir, what that means is I'm going to be reviewing your file, making a decision about whether or not to release you or detain you. If I do release you, sir, I will bring you back into court. I will go over conditions of release with you.

If I detain you, that order will be on the docket and your attorney can go over it with you and explain it to you.

Is there anything further from the government?

MR. WOO: No, Your Honor. Thank you.

THE COURT: Thank you.

Anything further from the defense?

MR. ALTMAN: No, Your Honor. Thank you.

THE COURT: Thank you all. The hearing is now closed.

(Proceedings concluded at 1:49 p.m.)

C E R T I F I C A T E

I, ELVA CRUZ-LAUER, court-approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

DATED at Phoenix, Arizona, this 23rd day of March, 2024.

s/Elva Cruz-Lauer
Elva Cruz-Lauer