**KURT M. ALTMAN, P.L.C**.
Kurt M. Altman (015603)
Ashley Fitzwilliams (035555)
12621 N. Tatum Blvd., #102
Phoenix, AZ 85032
Admin@altmanaz.com
Phone: (602) 689-5100
*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR-24-00394-PHX-SPL-2 |
| Plaintiff, | |
| v. | **DEFENDANT'S MOTION TO REVOKE DETENTION ORDER PUSUANT TO 18 U.S.C. § 3145** |
| Peter Biar Ajak, | |
| Defendant. | |

Peter Biar Ajak, by and through undersigned counsel, hereby files this Motion to Revoke Detention Order and asks this Court to release Mr. Ajak pursuant to the terms of the Bail Reform Act codified in 18 U.S.C. § 3142 and § 3145. Mr. Ajak is neither a flight risk nor danger to the community and should be released on his own recognizance. There are conditions or a combination of conditions that would assure Mr. Ajak's appearance before this Court for all future dates. Moreover, circumstances have changed with the development of the case, Mr. Ajak's health, and Mr. Ajak's family relocation, all of which warrant revoking the detention order.

This Motion and request for release is supported by the attached Memorandum of Points and Authorities.

///

RESPECTFULLY SUBMITTED this 16th day of August 2024.

**KURT M. ALTMAN, P.L.C.**

*/s/ Kurt M. Altman*
Kurt M. Altman
Ashley Fitzwilliams
*Attorneys for Defendant*

I hereby certify that on the 16th day of August 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Honorable Steven P. Logan
United States District Court Judge
logan_chambers@azd.uscourts.gov

David Pimsner
Assistant United States Attorney
David.Pimsner@usdoj.gov

Amy Chang
Assistant United States Attorney
Amy.Chang@usdoj.gov

Raymond Woo
Assistant United States Attorney
Raymond.Woo@usdoj.gov


By: */s/ Kurt M. Altman*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   PROCEDURAL BACKGROUND:**

On March 1, 2024, Mr. Ajak (and his co-defendant, Mr. Abraham Chol Keech) were arrested by agents of the Department of Homeland Security while visiting Phoenix, Arizona.  The arrest was based on a federal criminal complaint signed by United States Magistrate Judge Michael T. Morrissey on February 29, 2024.  The complaint included three violations of United States criminal code.  Count One alleged a violation of U.S.C. §§ 2778(b)(2), (c), Conspiracy to Violate the Arms Export Control Act (AECA) and the International Traffic in Arms Regulations (ITAR); Count Two alleged a violation of 50 U.S.C. §§ 4819(a)(1), 4819(a)(2)(D), and 4819(b), Conspiracy to Violate the Export Control Reform Act (ECRA) and the Export Administration Regulations (EAR); and Count Three alleged a violation of 18 U.S.C. § 544(a), Smuggling of Goods from the United States.

Mr. Ajak had his initial appearance on March 4, 2024, before United States Magistrate Judge Deborah M. Fine, and she set a Detention Hearing for March 8, 2024.  After the March 6, 2024 Indictment (ECF No. 14), which alleged identical allegations as the criminal complaint, an Arraignment Hearing and Detention hearing were held on March 15, 2024, before United States Magistrate Judge Eileen S. Willett.  Judge Willett entered an Order of Detention Pending Trial (ECF No. 31), specifically finding that Mr. Ajak posed a danger to the community, had "no significant contacts in the District of Arizona," and has "ties to a foreign country."  ECF No. 31 at 2.

**II.   HISTORY AND CHARACTERISTICS OF MR. AJAK:**

Mr. Ajak has had a diverse and inspiring collection of life experiences – he spent nine years in a Kenyan refugee camp as a child, separated from his family; he resettled to the U.S. with only the clothes on his back; he is a graduate of some of the most elite academic institutions in the U.S. and U.K.; he is the Founder and Chairman of an organization that brought together young leaders

across the many tribes of South Sudan, something that simply had not been done; he was a political prisoner for a year-and-and-a-half under brutal conditions, including five months in solitary confinement in a cell that was just 1.7 m (5.5 feet) by 0.9 m (3 feet); he was forced into political exile; and then was targeted by his country's president for political assassination. And Peter is only 40 years old. These experiences have provided him enormous wisdom, patience, and grace. And he has the maturity, judgment, and analytical skills of someone many years his senior.

He is described as a "South Sudanese peace activist, scholar and former political prisoner who was arbitrarily detained in South Sudan from July 2018 to January 2020." https://en.wikipedia.org/wiki/Peter_Biar_Ajak. Mr. Ajak is an extraordinary leader whose courage, brilliance, charisma, and relentless and incisive criticism of South Sudan President Kiir has made him a mortal threat to Kiir's iron grip on power. Despite having been imprisoned, tortured, and pursued by a death squad to be murdered on the orders of the President, Mr. Ajak has never given up.

Mr. Ajak is highly educated. He holds a bachelor's degree in economics from La Salle University, a master's degree in Public Administration in International Development from the John F. Kennedy School of Government at Harvard, and a PhD from the University of Cambridge, Trinity College. At the time of his arrest, Mr. Ajak was employed as a Fellow with the John F. Kennedy School of Government at Harvard University. Prior to his arrest, he lived in Maryland with his wife, Nyathon Mai, and their four children. But as of July 2024, his wife and children have relocated to Scottsdale, Arizona to be closer to Mr. Ajak.

**III. LAW:**

In determining whether to detain or release a defendant, the court must consider: (1) the nature and seriousness of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's character, physical and mental condition, family and community ties, past conduct,

history relating to drug or alcohol abuse, and criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release." 18 U.S.C. § 3142(g), *United States v. Cardenas,* 784 R.2d 937, 938-939 (9th Circ. 1986). A judicial officer "*shall* order the pretrial release of the person on personal recognizance . . . unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). If the court finds personal recognizance will not assure the defendant's appearance or protect the community from danger, the "judicial officer shall order the pretrial release of the person … subject to the *least restrictive* further condition, or combination of conditions" the court determines "will reasonably assure the appearance of the person as required and the safety of … the community." 18 U.S.C. § 3142(c)(1)(B). The government bears the burden of establishing by a preponderance of the evidence that the defendant is a flight risk and by clear and convincing evidence that he is a danger. *United States v. Aitkens,* 898 F.2d 104, 107 (9th Cir. 1990). It is well established that the weight of the evidence is the ***least*** important of the factors to be considered by the judicial officer. "Section 3142 neither requires nor permits a pretrial determination that the person is guilty." *United States v. Winsor,* 785 F.2d 755, 757 (9th Cir. 1986).

Moreover, where "a person is ordered detained by a magistrate judge … the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). When reviewing an order of detention, "the district court is to make its own 'de novo' determination of the facts, whether different from or an adoption of the findings of the magistrate." *United States v. Koening*, 912 F.2d 1190, 1193 (9th Cir. 1990). That review of the detention order "is to be conducted without deference to the magistrate's factual findings" and the district court may conduct an evidentiary hearing, if needed. *Id.* at 1192-93.

## IV. ARGUMENT:

Mr. Ajak should be released from custody as he poses no risk of nonappearance for court proceedings and is no danger to the community. His history and characteristics show him to be an educated, active and contributing member of society who works to provide for his family. As stated in the Pretrial Services Report (ECF No. 7), Mr. Ajak is legally present in the United States. In August 2023, he was granted asylum because he has been marked for assassination by the *not* democratically elected ruling regime of South Sudan. So, not only he must remain in the United States because of his asylum status, but he will remain in the United States because it is one of the few places in the world that he and his family are safe.

Additionally, there have been several major changes in circumstances since the detention order went into effect.

**First, the case has become more complicated.** The government's investigation into the case is ongoing and other than Mr. Ajak, it implicates attorneys, international and high profile people, and potentially, U.S. government officials. As a result, discovery continues to grow in volume due to several factors. First, subpoenas have been issued to several unindicted people involved in this matter, including prior attorneys for Mr. Ajak and his family. Those individuals, through counsel, continue to respond to the subpoenas and produce materials responsive to the subpoenas on a rolling basis. Most of the subpoenaed material must be reviewed by undersigned counsel for claims of attorney client privilege before moving onto a United States DOJ filter team for review. This all must happen prior to its disclosure and review by the government's trial team. Second, discovery includes national security materials which first requires defense counsel to obtain security clearance before disclosure can be turned over. Third, all disclosure in this matter is subject to a protective order. Because of these factors, disclosure is voluminous, complicated to obtain, and slow to be turned over

to defense counsel which, in turn, makes it complicated and slow to turnover to Mr. Ajak while he is in custody. And because of the complexities associated with this matter, this Court made the case complex and set trial in September 2025. Although he understands the reason the case needed to be designated complex and ultimately agreed to it, Mr. Ajak is deeply frustrated by the time it will take to get to trial, the slowness with which the defense is receiving discovery, and the hurdles to be jumped through to see Mr. Ajak, let alone to meaningfully discuss the evidence and case with him while he is in custody. However, if he were released to live with his family, who now resides in Scottsdale, Arizona, many of these discovery issues would be alleviated.

**Second, Mr. Ajak has an ongoing medical issue that is not being addressed while in custody.** Due to his difficult early life in the South Sudan, where he was a forced "lost boy" soldier and political prisoner, Mr. Ajak has a complicated foot tissue issue because of not having or wearing shoes. After years of being barefoot in rough desert terrain, thorns and other debris has been imbedded into the sole tissue of his feet. As a result, over time he develops painful calluses which impair his ability to use his feet, and which requires self-help measures (cutting them out with a razor blade) or medical intervention. Mr. Ajak has reported the issue to the medical providers at CoreCivic Florence, but they are not equipped to address it. Their advice to him was to scrub them off with a loofah, which of course did not work. Since May 2024, undersigned counsel has inquired with the U.S. Marshals office about what is required to have Mr. Ajak transported to a hospital to deal with the issue, but no guidance has been provided. As such, Mr. Ajak's feet are getting worse while in custody, and cause him daily pain and difficulties.

**Third, Mr. Ajak's family has relocated to Arizona.** In July 2024, given the expected length of the case and their struggles to see and communicate with Mr. Ajak while in custody, Mr. Ajak's wife and children, uprooted their lives and relocated across the country to Scottsdale, Arizona. Ms.

7

Mai has enrolled their children in local schools, and she is actively looking for work in the area. As such, one of Judge Willett's concerns—that Mr. Ajak had no significant contacts in the District of Arizona—is no longer a concern. With his family in Arizona and his life hanging in the balance anywhere else, there is no other place Mr. Ajak would or could go if he were released from custody. His family's relocation to Arizona and joining in the local community serves several other functions that support Mr. Ajak's release. It ensures that Mr. Ajak can be placed in the custody of his family upon release; it provides a relatively close location so that Mr. Ajak can meet with undersigned counsel about his case; and it makes it possible for him to find local medical care for his foot issue and have a place and support necessary to recover after treatment.

In its Detention Memorandum (ECF No. 22), the government argued that Mr. Ajak should be detained as both a flight risk and a danger. To meet their burden, they rely exclusively on the allegations levied against Mr. Ajak. The first nine pages of the memorandum is nothing more than a regurgitated rewrite of the criminal complaint allegations. The complaint (ECF No. 3) is cited approximately 25 times as support for detention, despite the allegations being the ***least*** important factor when determining release and the factor to be given the ***least*** weight by the court. *See United States v. Winsor,* 785 F.2d at 757. The government calls Mr. Ajak a "significant flight risk*"* and support that allegation with reference to other unproven allegations from the complaint. ECF No. 22 at 9-12. The same applies to the government's argument that Mr. Ajak is a danger to the community. They again support that allegation with citations to the unproven allegations of the complaint. ECF No. 22 at 12-14. Ultimately, the government argued that Mr. Ajak should be detained because they believe he is guilty; yet, to date, nothing has been proven.

8

Mr. Ajak is confident that when the focus is on the essential factors listed in 18 U.S.C. § 3142(g) and the significant changes in circumstances with the case and his personal life, it is clear his release is appropriate and warranted under the law and that the detention order should be revoked.

**A. Mr. Ajak's history and characteristics indicate he is not a flight risk nor a danger to the community.**

As repeatedly pointed out in the Pretrial Services Report, Mr. Ajak came to the United States as a teenager. He graduated from high school and went on to obtain numerous advanced degrees culminating in a PhD. ECF No. 7 at 2. He has worked his entire adult life as a peace activist trying to bring democracy to his native land. He is present in the United States on asylum status and therefore cannot travel without jeopardizing that status and his life. Prior to his arrest, he lived with his wife, Nyathon Mai (also present in the U.S. on asylum status), and their four children in Maryland. *Id.* As discussed above, Ms. Mai and their four children recently relocated to Scottsdale, Arizona to be closer to Mr. Ajak, and if he were released, he would resume living with them at their new residence in Scottsdale. In addition to his immediate household, Mr. Ajak has all his close extended family members are present here in the United States. Mr. Ajak's mother splits time residing with he and his sister, Alakiir Ajak, who is a nurse and U.S. citizen who lives in California with her husband. And so, his mother will also spend half her time residing here in Arizona with Mr. Ajak's family. Therefore, the Court has several suitable third-party custodians to choose from—Mr. Ajak's wife, mother, and sister.

Mr. Ajak does not have the ability to flee from the United States. First, Mr. Ajak's arrest became worldwide news, including in South Sudan. This publicity, especially in South Sudan, makes the world outside the United States much more dangerous for him. For the security of he and his family, the best place for them is right here in the United States. Furthermore, on the day of his

arrest, federal authorities conducted a search warrant at his home in Maryland. During that search, Mr. Ajak's South Sudanese passport (his only passport) was collected. So, Mr. Ajak has no ability to leave the United States as his only passport is in the possession of the government. Finally, as far as Mr. Ajak and undersigned counsel are aware, the account and money tied to the conduct in this matter has been seized by the government. On February 29, 2024, U.S. Magistrate Judge Morrissey signed a warrant for the government to seize the assets. As such, Mr. Ajak has no financial means to flee were he released as he has no access to large amounts of money as claimed by the government during the detention hearing.

Mr. Ajak poses no danger to any community. As the Pretrial Services Report clearly stated, "there are no known factors indicating the defendant poses a risk of danger to the community." ECF No. 7 at 4. Mr. Ajak has no criminal history, no history of alcohol or drug abuse, he has no passport or means to flee, and he has the most compelling of reasons to remain in Arizona and resume being a contributing member of society—his family is now here. He would never abandon his family or jeopardize their safety, and Arizona is the safest place for all of them to remain during the pendency of this case. He now has a bigger reason to become a vested and contributing member of the local community with his family being a part of it. The government's argument that the unproven allegations in the complaint are sufficient to prove by clear and convincing evidence that Mr. Ajak poses a danger is without merit.

Finally, nothing in Mr. Ajak's history indicates he would fail to appear as instructed. However, should this Court have even the slightest concerns about Mr. Ajak's likelihood to appear before the court, those concerns could be even further mitigated by additional conditions of release. Mr. Ajak's wife or sister or mother could be evaluated as an appropriate third-party custodian. Mr. Ajak could be outfitted with a GPS monitoring system that would always alert Pretrial Services to his

whereabouts. Mr. Ajak could also be placed on home detention. This Court has a myriad of options to assure his appearance.

## V. CONCLUSION:

For the reasons stated herein, Defendant Peter Biar Ajak, respectfully requests that the Court revoke the detention order and order his release pursuant to the terms of the Bail Reform Act codified in 18 U.S.C. § 3142 and § 3145, pending conclusion of this case.

Circumstances in this case have changed since he was initially detained in March 2024—the case has become increasing complicated and lengthy with the trial being set more than a year away, and Mr. Ajak's ongoing foot issue is not and cannot being addressed while he is in custody. Further, Mr. Ajak's family has relocated to Arizona, which ensures he has reason and ability to remain in Arizona during the case. Mr. Ajak has no passport, no money to flee and cares for the safety and wellbeing of himself and his family too much to leave the state, let alone the country. He is neither a flight risk nor danger to the community and he should be released on his own recognizance (OR). Further, if OR release is not reasonable to this Court, there are conditions or a combination of conditions that this Court can impose to assure Mr. Ajak's appearance for all future dates.

RESPECTFULLY SUBMITTED this 16th day of August 2024.

**KURT M. ALTMAN, P.L.C.**

*/s/ Kurt M. Altman*_____
Kurt M. Altman
Ashley Fitzwilliams
*Attorneys for Defendant*

11

I hereby certify that on the 16th day of August 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Honorable Steven P. Logan
United States District Court Judge
logan_chambers@azd.uscourts.gov

David Pimsner
Assistant United States Attorney
David.Pimsner@usdoj.gov

Amy Chang
Assistant United States Attorney
Amy.Chang@usdoj.gov

Raymond Woo
Assistant United States Attorney
Raymond.Woo@usdoj.gov


By: */s/ Kurt M. Altman*