TIMOTHY COURCHAINE
United States Attorney
District of Arizona
AMY C. CHANG
Arizona State Bar No. 027566
RAYMOND K. WOO
Arizona State Bar No. 023050
M. BRIDGET MINDER
Arizona State Bar No. 023356
Assistant United States Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: amy.chang@usdoj.gov
Email: raymond.woo@usdoj.gov
Email: bridget.minder@usdoj.gov
Attorneys for Plaintiff

☑ FILED ___ LODGED
___ RECEIVED ___ COPY

APR 3 0 2025

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

REDACTED FOR
PUBLIC DISCLOSURE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>vs.<br><br>1. Abraham Chol Keech,<br>(Counts 1 through 4)<br><br>and<br><br>2. Peter Biar Ajak,<br>(Counts 1 through 4)<br><br>Defendants. | No.   CR24-00394-PHX-SPL<br><br>**SUPERSEDING INDICTMENT**<br><br>VIO:  18 U.S.C. § 371<br>(Conspiracy)<br>Count 1<br><br>50 U.S.C. §§ 4819(a)(1),<br>4819(a)(2)(D), and 4819(b); and<br>15 C.F.R. Parts 736.2(b)(1)<br>and 774, Supp. No. 1<br>(Conspiracy to Violate the Export<br>Control Reform Act and the<br>Export Administration Regulations)<br>Count 2<br><br>18 U.S.C. § 554(a)<br>(Smuggling of Goods from the<br>United States)<br>Count 3<br><br>18 U.S.C. §§ 2332g(a)(1),<br>2332g(b)(1), and<br>2332g(c)(1)<br>(Conspiracy to Export Missile<br>Systems Designed to Destroy<br>Aircraft)<br>Count 4 |

18 U.S.C. §§ 981 and 982,
21 U.S.C. § 853, 22 U.S.C. § 401,
28 U.S.C. § 2461(c), and
50 U.S.C. § 4819(d)
(Forfeiture Allegation)

**THE GRAND JURY CHARGES:**

## COUNT 1

**Conspiracy to Commit Offenses against the United States**

1. Beginning no later than on or about February 20, 2023, and continuing to on or about March 1, 2024, in the District of Arizona and elsewhere, defendants ABRAHAM CHOL KEECH and PETER BIAR AJAK did knowingly and willfully conspire and agree with each other, and with others known and unknown to the grand jury, to commit the following offense against the United States: 22 U.S.C. § 2778(b)(2), (c); and Title 22, Code of Federal Regulations, Parts 121.1, 123.1, 126.1, 127.1, and 127.3 (Violations of the Arms Export Control Act (AECA) and the International Traffic in Arms Regulations (ITAR)).

**Objects of the Conspiracy**

2. The objects of the conspiracy were to procure, export, attempt to export, and cause to be exported, from the United States to the Republic of South Sudan, various defense articles, including AK-47 rifles (fully automatic), PKM rifles (fully automatic), RPG-7 launchers, PG-7 HE rounds, FIM-92 Stinger systems, M-67 hand grenades, and PG-7VT / PG-7T AT rounds, without first obtaining the required license or written approval for such export from the United States Department of State, Directorate of Defense Trade Controls.

**Manner and Means of the Conspiracy**

3. The manner and means used by KEECH, AJAK, and others to achieve the objects of the conspiracy include, but are not limited to, the following:

(a) Soliciting quotes from entities they believed to be weapons suppliers, including but not limited to an Arizona-based weapons dealer (Entity-1), to procure

weapons to arm individuals in support of a non-democratic regime change in South Sudan;

(b) Communicating with each other, representatives of Entity-1, and others via email, video and telephone conferences, encrypted messaging applications, in-person meetings, and other methods regarding the models, quantities, prices, payment schedule, and delivery methods for various weapons;

(c) Soliciting funds to be used to procure, purchase, and transport export-controlled weapons from the United States;

(d) Developing a fictitious invoice for "consulting services" related to security for "human rights, humanitarian, and civic engagement inside South Sudan refugee camps" to conceal the weapons purchase; and

(e) Causing approximately $2 million to be wired to a bank account in Arizona in connection with the weapons purchase.

**Overt Acts in Furtherance of the Conspiracy**

4.   In furtherance of the conspiracy, and to effect and accomplish the objects thereof, KEECH and AJAK, together with others known and unknown, committed various overt acts within the District of Arizona and elsewhere, including but not limited to the following:

(a) On or about February 20, 2023, KEECH participated in a videoconference with other individuals, including individuals associated with groups opposed to the current government in South Sudan. During the videoconference, KEECH said he had recently been in South Sudan and believed the current government would collapse. During the call, KEECH referenced the fact that South Sudan is under sanctions.

(b) On or about April 10, 2023, KEECH and another individual traveled to Phoenix, Arizona, to inspect samples of AK assault rifles, machine guns, sniper rifles, and an RPG launcher at Entity-1. During the inspection, KEECH said he would provide a detailed list of the weapons and ammunition that he needed. KEECH

also discussed smuggling the weapons through a U.S. military base in an African country; he indicated that the first few shipments would be "dealing with illegal business."

(c) On or about November 3 and November 8, 2023, KEECH and AJAK participated in two videoconferences with individuals from Entity-1. During these videoconferences, AJAK said that he was looking for "basically a coup … with both internal and external fronts" against the current South Sudanese government. AJAK said he wanted to "knock it over and rebuild a new country," and that he would be installed as the new "head of government." AJAK said he needed anti-tank weapons and anti-aircraft systems to disable South Sudan's military tanks and helicopters. During these videoconferences, KEECH and AJAK were told that there were sanctions in place prohibiting the sale of weapons to South Sudan. In response, KEECH said, "this issue of sanctions, don't worry about it." Similarly, AJAK said he was aware of the sanctions and that the sanctions would be "lifted immediately" after the coup.

(d) On or about December 22, 2023, KEECH and AJAK spoke with Entity-1's representatives regarding the proposed shipment method, including the need to bribe U.S. military officials to get the weapons to South Sudan. Later that day, KEECH sent a photograph of a hand-written list of weapons for "Immediate consignment for Operation Free South Sudan." The weapons list included quantity and pricing for AK-47 rifles (and ammunition), PKM rifles (and ammunition), RPG-7 grenade launchers (and ammunition), sniper rifles, and Stinger missiles; it also included a 20% transportation fee "from AZ to South Sudan." The weapons list and transportation fee totaled approximately $1.38 million.

(e) From at least January to February 2024, AJAK told representatives of Entity-1 that he was meeting with a financier to secure funding for the purchase. On or about February 9, 2024, AJAK told Entity-1's representatives that he had

obtained funding, and they discussed the payment and delivery schedule. AJAK said the payment would be made via a wire transfer from a U.S.-based bank account. AJAK directed Entity-1's representatives: "What you will need to do though, is we need to, like, bill it as, like, something that is more creative," such as "humanitarian whatever," or "humanitarian support for democracy."

(f) Between on or about February 12, 2024, and February 16, 2024, AJAK further discussed the preparation of a fictitious invoice to conceal the weapons purchase. For example, on or about February 13, 2024, AJAK said he had a memorandum of understanding with his financier that contemplated "costs for contracting a company for security provision for field activities inside South Sudan and refugee camps." AJAK instructed Entity-1 that the invoice "should appear like costs for what a normal security company would need, to provide security inside a country that has hostilities." AJAK said they needed to "basically break that into, like, components," such as "personnel" or "materials," so that the invoice reflected the costs related to providing security for "humanitarian, human rights, and civic engagement in South Sudan."

(g) Between on or about February 19, 2024, and February 26, 2024, AJAK caused approximately $2 million to be transferred to Entity-1's Arizona-based bank account in connection with the weapons purchase. These payments were made in four separate installments. On or about February 21, 2024, AJAK explained, "We have to spread [the payments] out to avoid a bank review," and to "avoid suspicion."

(h) On or about February 22, 2024, KEECH and AJAK traveled to Phoenix, Arizona, for a weapons inspection at Entity-1. During the inspection, KEECH and AJAK inspected sample AK-47 rifles, PKM rifles, RPG-7 grenade launchers, sniper rifles, FIM-92 Stinger systems, M-67 hand grenades, and other items. Throughout the meeting, defendants were reminded that the proposed

export from the United States was illegal. For example, Entity-1's representatives explained to KEECH and AJAK:

- "The reason that you're paying the premium … this all needs licenses by the U.S. Government, that's where our services come in, we're not getting those and we're able to get [the weapons] out. South Sudan is restricted for now";
- "The U.S. military has nothing to do with this, this is on us, we're paying somebody off to get it onto the base and airlifted out and arrive for you";
- "It's the business that we work in, … it's not legal"; and
- "It's illegal, right, for these to be in [African country], I'm not getting a license for [African country]."

(i) During the weapons inspection on or about February 22, 2024, AJAK signed and initialed both (i) an invoice for the weapons AJAK and KEECH intended to purchase from Entity-1, and (ii) a fictitious invoice purportedly for the provision of security services. With respect to the weapons invoice, AJAK agreed to the purchase of approximately $3.97 million worth of weapons and ammunition. The total purchase amount for the fictitious security services invoice was also for approximately $3.97 million; instead of weapons, however, the fictitious invoice included line items for "consulting services to develop security provisions for field activities related to human rights, humanitarian, and civic engagement inside South Sudan refugee camps," and related items.

(j) On or about February 28, 2024, and February 29, 2024, KEECH and AJAK traveled to Phoenix, Arizona, for a final weapons inspection at Entity-1. They arranged to meet with Entity-1's representatives on March 1, 2024.

5. All in violation of Title 18, United States Code, Section 371.

## COUNT 2

### Conspiracy to Violate the Export Control Reform Act (ECRA) and the Export Administration Regulations (EAR)

6. Beginning no later than on or about February 20, 2023, and continuing to on or about March 1, 2024, in the District of Arizona and elsewhere, ABRAHAM CHOL KEECH and PETER BIAR AJAK, together with others known and unknown, did knowingly and willfully conspire to export and cause to be exported from the United States to the Republic of South Sudan various items subject to the EAR, including PSL sniper rifles, 7.62 x 39 mm ammunition, and 7.62 x. 54 mm ammunition, without first obtaining the required license or authorization from the United States Department of Commerce.

7. All in violation of Title 50, United States Code, Sections 4819(a)(1), 4819(a)(2)(D), and 4819(b); and Title 15, Code of Federal Regulations, Parts 736.2(b)(1) and 774, Supp. No. 1.

## COUNT 3

### Smuggling of Goods from the United States

8. Beginning no later than on or about February 20, 2023, and continuing to on or about March 1, 2024, in the District of Arizona and elsewhere, ABRAHAM CHOL KEECH and PETER BIAR AJAK, together with others known and unknown, did fraudulently and knowingly buy and facilitate the transportation and concealment of merchandise, namely AK-47 rifles (fully automatic), PKM rifles (fully automatic), RPG-7 launchers, PG-7 HE rounds, FIM-92 Stinger systems, M-67 hand grenades, PSL sniper rifles, 7.62 x 39 mm ammunition, and 7.62 x. 54 mm ammunition, prior to exportation, knowing the same to be intended for exportation from the United States to the Republic of South Sudan contrary to the AECA, Title 22, United States Code, Section 2778, the ITAR, Title 22, Code of Federal Regulations, Parts 120-130, the ECRA, Title 50, United States Code, Section 4819, and the EAR, Title 15, Code of Federal Regulations, Parts 730-774.

9. All in violation of Title 18, United States Code, Section 554(a).

## COUNT 4

### Conspiracy to Export Missile Systems Designed to Destroy Aircraft

10. Beginning no later than on or about February 20, 2023, and continuing to on or about March 1, 2024, in the District of Arizona and elsewhere, ABRAHAM CHOL KEECH and PETER BIAR AJAK, together with others known and unknown, did knowingly conspire to acquire, transfer directly and indirectly, receive, possess, and export (1) an explosive and incendiary rocket and missile that is guided by a system designed to enable the rocket and missile to seek and proceed toward energy radiated and reflected from an aircraft and toward an image locating an aircraft, and otherwise direct and guide the rocket and missile to an aircraft; (2) a device designed and intended to launch and guide said rocket and missile; and (3) any part and combination of parts designed and redesigned for use in assembling and fabricating said rocket, missile, and device; and the offense occurred in and affected interstate and foreign commerce.

11. All in violation of Title 18, United States Code, Sections 2332g(a)(1), (b)(1), and (c)(1).

### FORFEITURE ALLEGATION

12. The Grand Jury realleges and incorporates the allegations of Counts 1 through 4 of this Indictment, which are incorporated by reference as though fully set forth herein.

13. Pursuant to Title 18, United States Code, Sections 981 and 982; Title 21, United States Code, Section 853; Title 22, United States Code, Section 401; Title 28, United States Code, Section 2461(c); and Title 50, United States Code, Section 4819(d), and upon conviction of one or more of the offenses alleged in Counts 1 through 4 of this Indictment, the defendant(s) shall forfeit to the United States all right, title, and interest in any and all property, real or personal, involved in such offense(s), or any property traceable to such property involved in the offense(s), or conspiracy to commit such offense(s), including the following: (a) any articles intended to be or are being or have been exported

or removed from the United States in violation of law; (b) any vessel, vehicle, or aircraft containing the same which has been or is being used in exporting or attempting to export such articles; (c) all money or other property that constitutes or is derived from proceeds traceable to a violation of a statute listed in Title 18, United States Code, Section 981(a)(1)(C), and (d) any and all property used or intended to be used in any manner or part to commit or to facilitate the commission of a violation of Title 50, United States Code, Section 4819(b), or constituting or traceable to gross proceeds thereof, or constituting an item or technology that is exported or intended to be exported in violation thereof, including, but not limited to the sum of money representing the amount of money involved in the offense(s) and the property named below.

14.     A sum of money equal to at least $1,972,975.00 in United States currency, representing the amount of money involved in the offenses.

15.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant(s):

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty, it is the intent of the United States to seek forfeiture of any other property of said defendant(s) up to the value of the above-described forfeitable property, pursuant to Title 21, United States Code, Section 853(p).

///
///
///
///
///

16. All in accordance with Title 18, United States Code, Sections 981 and 982; Title 21, United States Code, Section 853; Title 22, United States Code, Section 401; Title 28, United States Code, Section 2461(c); Title 50, United States Code, Section 4819(d); and Rule 32.2, Federal Rules of Criminal Procedure.

A TRUE BILL

/S/
FOREPERSON OF THE GRAND JURY
Date: April 30, 2025

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

/S/
AMY C. CHANG
RAYMOND K. WOO
M. BRIDGET MINDER
Assistant U.S. Attorneys