UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | 2:24-cr-00394-SPL-2 |
| | ) | |
| v. | ) | Phoenix, Arizona |
| | ) | August 7, 2025 |
| Peter Biar Ajak, | ) | |
| | ) | |
| Defendant. | ) | |
| _____________________________ | ) | |

**BEFORE: THE HONORABLE STEVEN LOGAN, JUDGE**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**CHANGE OF PLEA HEARING**


Official Court Reporter:
Teri Veres, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc. 38
Phoenix, Arizona 85003-2151
(602) 322-7251


Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

**A P P E A R A N C E S**

For the Government:

UNITED STATES ATTORNEY'S OFFICE
By: **Amy Chang, Esq.**
**M. Bridget Minder, Esq.**
2 Renaissance Square
40 N Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408

For the Defendant:

KURT M. ALTMAN, PLC
By: **Kurt M. Altman Esq.**
12621 North Tatum Boulevard
Suite 102
Scottsdale, Arizona 85032

**P R O C E E D I N G S**

COURTROOM DEPUTY: We're on the record in CR24-394, United States of America versus Peter Biar Ajax before the Court for a change of plea.

THE COURT: Please announce for the record.

MS. CHANG: Good afternoon, Your Honor, Amy Chang and Bridget Minder for the United States.

THE COURT: Good afternoon, Ms. Minder and Ms. Chang.

MR. ALTMAN: And good afternoon, Your Honor, Kurt Altman on behalf of Mr. Ajak, who is present standing next to me in custody.

THE COURT: Mr. Altman and Mr. Ajak, good afternoon to both of you. Sir, this is the time set for your change of plea hearing. Please raise your right hand to be sworn.

*(Defendant sworn.)*

THE COURT: Sir, you could put your hand down, please. Sir, what language do you speak and understand the best?

THE DEFENDANT: I speak English.

THE COURT: Mr. Altman, can you move his microphone directly up. He's very, very tall. That would be very helpful.

Sir, what's your full name?

THE DEFENDANT: Peter Biar Ajak.

THE COURT: And is your name spelled correctly on your plea agreement?

THE DEFENDANT: It is, Your Honor.

THE COURT: Sir, it's very important that you answer all of my questions truthfully. If you don't, the US Attorney's Office, they can prosecute you for the crime of perjury or false statement and both of those crimes carry prison sentences. Do you understand that?

THE DEFENDANT: I do.

THE COURT: Mr. Altman, if you could please lay the foundation as to how the plea agreement was explained to your client.

MR. ALTMAN: Judge, this plea agreement was finalized over probably weeks and months of negotiation with the US Attorney's Office; and then I went to where he is in custody at CoreCivic. Met with him in the visitation room for probably two hours on this case and went through every word and what every word meant and every change that we had made and what we finally came up with. So I went through every paragraph with him, and then I left it with him to read for himself.

THE COURT: Thank you very much.

And, sir, how old are you?

THE DEFENDANT: I'm 41 years old.

THE COURT: And how much education do you have?

THE DEFENDANT: I have a Ph.D.

THE COURT: In what?

THE DEFENDANT: In politics.

THE COURT: Sir, in the last 48 hours have you used any drugs, prescription medication, alcohol or anything that you believe would make it difficult for you to understand what's being said this afternoon?

THE DEFENDANT: No.

THE COURT: Have you ever been treated for a mental or an emotional disorder?

THE DEFENDANT: No.

THE COURT: Does either counsel have reason to believe that the defendant's not competent to enter a plea?

MS. CHANG: No, Your Honor.

MR. ALTMAN: No, Your Honor.

THE COURT: Sir, I have your plea agreement here. It's a 15-page document. On Page No. 15 I recognize the signature of the federal prosecutor, Ms. Chang. On Page No. 14 I recognize the signature of your lawyer, Mr. Altman, and also on Page No. 14 I see that you've signed above your typewritten name; is that correct?

THE DEFENDANT: That is.

THE COURT: Sir, you speak the English language really well. Do you read it and write it just as well?

THE DEFENDANT: Yes.

THE COURT: Did you have a chance to read through all fifteen pages of this plea agreement?

THE DEFENDANT: Yes, several times.

THE COURT: Do you understand the entire plea agreement?

THE DEFENDANT: I do.

THE COURT: Did your lawyer answer any and all questions that you had about this plea agreement?

THE DEFENDANT: He did.

THE COURT: Sir, has anyone forced, threatened or coerced you into entering into this plea agreement?

THE DEFENDANT: Absolutely not.

THE COURT: Has anyone made you any promises to get you to enter into this plea agreement other than the promises that are contained in your plea agreement?

THE DEFENDANT: No.

THE COURT: Sir, are you pleading guilty voluntarily because you believe you're guilty of this crime?

THE DEFENDANT: Yes, I do.

THE COURT: Sir, your plea agreement, it contemplates that you'll plead guilty to Count 1 of the Superseding Indictment in Case No. 24-00394 and the crime is conspiracy to violate the Arms Export Control Act, also known as the AECA, and the International Traffic and Arms Regulations, which is also known as the ITAR, and that's in

violation of Title 18, United States Code §371, which would constitute a Class D felony offense and, also, that you wish to plead guilty to Count No. 2 of the Superseding Indictment charging with you conspiracy to violate the Export Control Reform Act, also known as the ECRA, and the Export Administration Regulations known as the EAR in violation of Title 50, United States Code §4819(a)(1) and (a)(2)(D) and (b), as well as Title 15 of the Code of Federal Regulations Parts 736.2(b)(1) and 774 Supplement No. 1, which would constitute a Class C felony offense.

Sir, are those the crimes you wish to plead guilty to?

THE DEFENDANT: Yes.

THE COURT: Sir, a violation under 18 United States Code §371 is punishable by a maximum fine of $250,000 and a maximum term of imprisonment of five years or both and a term of supervised release of three years.

A violation of 50 United States Code §4819(a)(1) and (a)(2)(D) and (b) and 15 C.F.R. Parts 736.2(b)(1) and 774 Supplement No. 1 is punishable by a maximum fine of one million dollars and a maximum term of imprisonment of twenty years or both and a term of supervised release of three years.

There's a maximum term of probation on both counts -- I'm sorry, both counts is five years, including a minimum term of one year if probation is imposed.

Sir, do you understand the potential punishments in your case?

THE DEFENDANT: I do.

THE COURT: Sir, in addition to that, you'll be required to pay a hundred dollar special assessment for each count of conviction. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: Sir, do you also know and understand that this guilty plea may have consequences with respect to your immigration status that are outside of the control of the United States Attorney's Office for the District of Arizona?

Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: Sir, what is your immigration status here in the United States?

THE DEFENDANT: I'm a beneficiary of asylum.

THE COURT: Sir, I'm looking at Page No. 3 of your plea agreement here. On Line No. 19 it appears that you received a Public Benefit Parole back in 2020, and you were granted asylum in the United States in 2023.

It also indicates that the United States Attorney's Office is aware that you're a former political prisoner of the government of the South Sudan and that you've been previously subject to arrest or detention in that country and that the United States Attorney's Office understands that you

reasonably believe you could face intentional infliction of severe pain and suffering by or at the acquiescence of the current South Sudanese government if you're returned to the South Sudan.

Have you had a chance to go through all of these sections that are listed on Page No. 3? They're sub parts c, d and e of Section No. 2.

THE DEFENDANT: Yes, I went through it both with my lawyer and I also read them by myself.

THE COURT: And, sir, hopefully you have had a chance to also review the federal sentencing table with your lawyer, Mr. Altman?

THE DEFENDANT: Yes.

THE COURT: Do you understand the federal sentencing table?

THE DEFENDANT: Yes.

THE COURT: Sir, any recommendation in your plea agreement I'm not required to go along with; and if I reject the recommendation, you cannot withdraw from the plea or from your plea agreement.

However, any stipulation is a promise; and if the promise is not kept, that means you can get out of this plea agreement. Do you understand that?

THE DEFENDANT: I do.

THE COURT: Sir, I want to focus your attention to

Page No. 4 at the top. There's a stipulation and there's an agreement contingent upon a plea by your co-defendant.

Did you talk to your lawyer about that?

THE DEFENDANT: Yes.

THE COURT: It indicates that your plea agreement is contingent on a guilty plea being entered by your co-defendant Keech and Keech's guilty plea being accepted by this Court.

You understand that if Keech does not accept his plea agreement for any reason or does not enter a plea of guilty, the United States may, but is not required to, withdraw from the plea agreement with you, in which case the parties would not be bound by the terms of this plea agreement, including any stipulations, recommendations or other agreements in this document or any of the facts contained in the factual basis.

Do you understand all of that?

THE DEFENDANT: I do.

THE COURT: If Keech withdraws his guilty plea or if this Court rejects Keech's guilty plea, the United States Government may, but is not required to, withdraw from this plea agreement with you. Only the United States, not the defendant, not you, may elect to withdraw from this plea agreement.

Do you understand all of that, sir?

THE DEFENDANT: I do.

THE COURT: And you wish to continue on with this plea?

THE DEFENDANT: I do.

THE COURT: And you plan to abide by the stipulation in 3a?

THE DEFENDANT: Yes.

THE COURT: 3b indicates there's a stipulation that you're not eligible for adjustment for certain zero point offenders. Do you agree with that?

THE DEFENDANT: Yes.

THE COURT: And you understand that you're not eligible for a downward adjustment pursuant to Sentencing Guideline Section 4C1.1?

THE DEFENDANT: I do.

THE COURT: There's also a section here starting on Line 20 of Page 4 that you, meaning one of the parties and the government, agree that there are no agreements regarding your sentence. Do you agree with that?

THE DEFENDANT: Yes.

THE COURT: Sir, there's another section on Line 22. It's for what's called acceptance of responsibility. Basically, if you sit down with the probation officer and if you provide that officer with truthful information about how you participated in this crime, you could receive up to three levels off for acceptance of responsibility.

Do you understand that?

THE DEFENDANT: I do.

THE COURT: Sir, Page No. 5, Line No. 7 indicates that you'll make a full accounting of all of your assets and you agree not to sell, hide, waste, spend, or transfer any of those assets without the approval of the United States Government. Do you agree to that?

THE DEFENDANT: Yes.

THE COURT: Do you also agree that you'll participate in the Inmate Financial Responsibility Program to fulfill all financial obligations due and owing under this agreement; is that right?

THE DEFENDANT: Yes.

THE COURT: Sir, Section 4a indicates that at the time of sentencing the United States Government will make an oral or written motion to dismiss Counts 3 and 4 of the Superseding Indictment as to you only in this case, which is CR24-00394, and it goes on to say that the United States Government will not prosecute you for any offenses committed by you and known by the United States in -- as detailed in the discovery provided by the United States to you in this case and in connection with the charges here in the Superseding Indictment.

But, sir, this section goes on to indicate your plea agreement is only good here in the District of Arizona.

There's four offices here. Only the District of Arizona.

Do you understand and agree with that?

THE DEFENDANT: Yes.

THE COURT: Sir, after I review your plea agreement, if I conclude that any provision is inappropriate, I can reject your plea agreement and give you an opportunity to withdraw your guilty plea. Do you understand that?

THE DEFENDANT: I do.

THE COURT: Sir, if your plea is rejected by this Court, you understand that any statements made during the time of your change of plea or sentence could be used against you in a subsequent hearing or proceeding subject to limitations of the federal rules, specifically Federal Rule 410.

Have you talked to your lawyer about that?

THE DEFENDANT: Yes.

THE COURT: Sir, if this plea is accepted and if I impose a sentence permitted by the terms of this plea agreement, you will not be permitted to withdraw from your plea or challenge your judgment or sentence on appeal with the exception of an appeal based on ineffective assistance of counsel or prosecutorial misconduct. Do you understand that?

THE DEFENDANT: I do.

THE COURT: Sir, you also reserve the right to file what's called a Motion for Compassionate Release and to appeal the denial of that motion to the Ninth Circuit Court of

Appeals. Do you understand that?

THE DEFENDANT: I do.

THE COURT: Sir, if required to do so, after you serve your prison sentence you'll then be placed on what's called supervised release and you'll be required to follow certain conditions imposed by me. If you violate any of those conditions, you could receive more time in prison in this case. Do you understand that?

THE DEFENDANT: I do.

THE COURT: Sir, just one moment. There's probably -- hold on just a second here.

Mr. Altman, do you know if your client is currently on probation, parole or any other punishment?

MR. ALTMAN: He is not currently on anything that you just mentioned, Your Honor.

THE COURT: Thank you very much.

Sir, I want to focus your attention to Page No. 7, "Disclosure of Information," Line 6. It says that the United States Government retains the unrestricted right to provide information and make any and all statements it deems appropriate to the Probation Office and to this Court in connection with this case. Do you agree with that?

THE DEFENDANT: Yes.

THE COURT: Sir, Section No. 8 on Page No. 7 and Page No. 8 indicate that you agree to forfeit, and that you

hereby forfeit, all interest in any asset that you own or over which you exercise control, directly or indirectly, as well as any property that's traceable, or derived from, or fungible with, or a substitute property that constitutes the proceeds of the crimes that you have been involved with and agree to plead guilty to: Specifically, $1,972,975 in United States currency that was seized from the bank account of U.S. Company-1 on the 1st of March of 2024 and that you waive all interest in those assets and any administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal, and that this forfeiture of your assets should not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any of the penalties that this Court imposes upon you in addition to the forfeitures and that you agree to waive all constitutional and statutory challenges in any matter to include direct appeal, habeas corpus, double jeopardy or any other means.

Did you talk about this forfeiture section with your lawyer?

THE DEFENDANT: Yes.

THE COURT: And you also agree to take all steps as required and requested by the United States to pass clear title to any assets requiring the passage of title?

THE DEFENDANT: Yes.

THE COURT: And you agree not to file any claim for

any listed property and that you waive and agree to hold the government and its agents and employees harmless from any and all claims whatsoever in connection with the seizures in your case?

THE DEFENDANT: I do.

THE COURT: Can the United States Government avow that if this matter proceeded to trial, you could prove each and every element beyond a reasonable doubt?

MS. CHANG: Yes, Your Honor.

THE COURT: Sir, before we get there, as a person accused of a crime here in the United States, you have certain rights that are guaranteed to you by the US Constitution.

You have a right to remain silent and to maintain your innocence throughout each phase of your case as well as to be represented by a lawyer through each stage of your case.

You have a right to confront and cross-examine all the government witnesses. You can compel witnesses to come to court and testify in your behalf; and, sir, the burden of proof is always on the United States Government to prove that you're guilty. It never shifts to you for you to prove that you're innocent, and the US Attorney's Office must prove each and every element of the crime beyond a reasonable doubt.

Sir, proof of guilt beyond a reasonable doubt means that Ms. Minder or Ms. Chang or Mr. Woo or all of them or colleagues must come into this federal courtroom and provide a

jury of your peers with sufficient evidence that will leave each and every jury member firmly convinced of your guilt before any of those jury members vote in finding you guilty.

Sir, do you understand your Constitutional rights that you have here in the United States of America?

THE DEFENDANT: I do.

THE COURT: Ms. Chang, can you place the elements on the record, please.

MS. CHANG: Yes, Your Honor.

For Count 1, which is Conspiracy to Violate the AECA and the ITAR, in violation of 18 U.S.C. 371, the United States must prove the following elements:

1. Beginning no later than on or about February 20th, 2023, and continuing to on or about March 1st, 2024, in the District of Arizona and elsewhere, an agreement was formed between two or more persons to willfully export or cause to be exported from the United States a defense article listed on the United States Munitions List without obtaining the requisite license or written approval from the United States.

2. The defendant became a member of the conspiracy knowing that one of its objects was to commit the crime of exporting or causing the export of defense articles without lawful authority and intended to help accomplish it.

In Element 3, one of the members of the conspiracy performed at least one overt act for the purpose of carrying

out the conspiracy.

To prove Count 2, Conspiracy to Violate the ECRA and the EAR --

THE COURT: Ms. Chang, let me just stop you for one minute, my apology.

(Judge and clerk confer.)

THE COURT: Ms. Chang, go ahead, please.

MS. CHANG: Thank you, Your Honor.

1. Beginning no later than on or about February 20th, 2023, and continuing to on or about March 1st, 2024, in the District of Arizona and elsewhere, an agreement was formed between two or more persons to willfully export or cause to be exported from the United States an article listed on the Commerce Control List;

2. Without obtaining a license or written approval for the export from the United States Department of Commerce;

3. The defendant became a member of the conspiracy knowing that one of its objects was to commit the crime of exporting or causing the export of controlled articles without lawful authority and intended to help accomplish it; and

4. The defendant did so willfully.

THE COURT: Ms. Chang, thank you very much for placing the elements of the crime on the record.

Sir, did you understand the elements that Ms. Chang, the federal prosecutor, just placed on the record?

THE DEFENDANT: Yes, I do.

THE COURT: And, sir, have you had a chance to sit down with your lawyer and discuss all of those elements?

THE DEFENDANT: Yes, we have.

THE COURT: When you sat down with Mr. Altman and discussed the elements, did he have what's called "discovery," also known as the evidence in the case with him to explain the evidence and how the United States Government would use the evidence against you?

THE DEFENDANT: Yes.

THE COURT: Are you satisfied that the United States Government has the requisite evidence to prove each and every element of both of these counts -- these crimes beyond a reasonable doubt?

THE DEFENDANT: Yes.

THE COURT: Sir, in your own words, tell me exactly why you're guilty of these offenses.

In other words, what did you do?

THE DEFENDANT: I was part of a conspiracy to obtain military-grade weapons to be exported to South Sudan without first obtaining the required licenses.

THE COURT: Sir, what time frame did this occur?

THE DEFENDANT: My involvement start between February 2023 to March 1st, 2024.

THE COURT: And, sir, what city and state or

multiple states or countries did this involved -- did this involve?

THE DEFENDANT: Primary here in the District of Arizona.

THE COURT: Who did you conspire with?

THE DEFENDANT: I conspire primarily with my co-defendant and others here within the United States and in South Sudan.

THE COURT: And that was to purchase, export or cause to be exported various weapons and ammunition?

THE DEFENDANT: Yes.

THE COURT: From where to where?

THE DEFENDANT: From the United States to South Sudan.

THE COURT: To do what?

THE DEFENDANT: For the purposes of liberating the country.

THE COURT: That's to cause the illegal export of these weapons and ammunition; is that correct?

THE DEFENDANT: Yes, that was the objective.

THE COURT: And that was to arm opposition groups seeking to effect a non-Democratic regime change in South Sudan?

THE DEFENDANT: Yes, for the purposes of regime change.

THE COURT: And who did you believe would become South Sudan's interim president?

THE DEFENDANT: We discuss several options. I was one of them. There were others that we were also looking at.

THE COURT: So following this non-Democratic regime change, it's you that intended to take power of South Sudan's interim president; is that correct?

THE DEFENDANT: I was one of the potential options, but there was also others. The objective was to remove a dictator so that we can have a Democratic future.

THE COURT: And these weapons and ammunition included AK-47 rifles; is that correct?

THE DEFENDANT: Yes.

THE COURT: Fully automatic?

THE DEFENDANT: Yes.

THE COURT: PKM rifles?

THE DEFENDANT: Yes.

THE COURT: Fully automatic?

THE DEFENDANT: Absolutely.

THE COURT: RPG-7 launchers; is that correct?

THE DEFENDANT: Yes.

THE COURT: PG-7 HE rounds?

THE DEFENDANT: Yes.

THE COURT: FIM-92 Stinger missile systems; is that right?

THE DEFENDANT: Yes.

THE COURT: M-67 hand grenades?

THE DEFENDANT: Yes.

THE COURT: PG-7VT and PG-7T AT rounds; is that correct?

THE DEFENDANT: Yes.

THE COURT: PSL sniper rifles?

THE DEFENDANT: Yes.

THE COURT: 7.62 x 39 millimeter ammunition; is that correct?

THE DEFENDANT: Right.

THE COURT: 762 x 54 millimeter ammunition; is that right?

THE DEFENDANT: Right.

THE COURT: Is it true that the total cost of the weapons and ammunition was $3,972,975; is that right?

THE DEFENDANT: Correct.

THE COURT: Do you now know that these weapons and ammunition are designated as defense articles on the United States Munitions List?

THE DEFENDANT: Yes.

THE COURT: Or that they're listed on the Commerce Control List; is that correct?

THE DEFENDANT: Yes.

THE COURT: So you knew that these weapons and

ammunition required a license?

THE DEFENDANT: Yes.

THE COURT: From who?

THE DEFENDANT: From the Department of State and from the Department of Commerce.

THE COURT: And that's before they could be exported from the United States to South Sudan?

THE DEFENDANT: That's correct.

THE COURT: Is it true that neither you or anyone else connected with this scheme had obtained or sought out those licenses?

THE DEFENDANT: That's correct.

THE COURT: On December the 22nd of 2023 is it true that an undercover agent in Phoenix, Arizona, who was posing as a weapons dealer told you that shipping the weapons and ammunition was what?

THE DEFENDANT: Was illegal.

THE COURT: Why?

THE DEFENDANT: Because it required licenses, which we didn't have.

THE COURT: To leave where?

THE DEFENDANT: Leave the United States to go to South Sudan.

THE COURT: Similarly, during February the 22nd of 2024, is it true that in a meeting in Phoenix, Arizona, the

undercover agent told you that the weapons purchase was illegal; is that true?

THE DEFENDANT: That's correct.

THE COURT: And that the weapons required export licenses that the agent had not obtained; is that true?

THE DEFENDANT: That's correct.

THE COURT: And that the agent would have to bribe the United States military members to get the weapons from where to where?

THE DEFENDANT: From United States to South Sudan.

THE COURT: When planning the purchase and the export of the $3,972,975 in weapons and ammunitions, your co-conspirator, Mr. Keech and you, did not believe that you were doing so on behalf of, or written permission from, an authorized federal government official or agent of the federal government; is that right?

THE DEFENDANT: Correct.

THE COURT: So because you knew -- or you and your co-defendant knew that exporting the weapons and ammunition without the required licenses was illegal, Keech and you agreed to disguise the shipment as what?

THE DEFENDANT: As humanitarian activities.

THE COURT: That's humanitarian activities in the South Sudanese refugee camps?

THE DEFENDANT: Right.

THE COURT: And this effort which you took part in included creating what?

THE DEFENDANT: Fictitious invoice.

THE COURT: For $3,972,975; is that right?

THE DEFENDANT: Correct.

THE COURT: For consulting services?

THE DEFENDANT: Yes.

THE COURT: Related to what?

THE DEFENDANT: Humanitarian -- human rights and humanitarian and civic engagements.

THE COURT: And associated items when, in fact, you knew the payment would be for the weapons and ammunition; is that true?

THE DEFENDANT: Correct.

THE COURT: Is it also correct that you solicited funds to pay for the weapons and ammunition and other expenses related to effecting a non-Democratic regime change?

THE DEFENDANT: Correct.

THE COURT: On or between February the 19th of 2024 and February the 26th of 2024 isn't it true that you caused two million dollars to be transferred to the undercover agent for what?

THE DEFENDANT: For payment for these weapons.

THE COURT: That's partial payment?

THE DEFENDANT: Yes.

THE COURT: For the weapons and what else? The ammunition?

THE DEFENDANT: Yeah, and the ammunition indeed.

THE COURT: And how many installments did it take to pay the two million?

THE DEFENDANT: Four installments.

THE COURT: And was that made in furtherance of this conspiracy?

THE DEFENDANT: Indeed.

THE COURT: Does that mean "yes"?

THE DEFENDANT: Yes, correct.

THE COURT: Is it true that another $1,972,975 which was seized from the bank account of U.S. Company-1 would have been used to fulfill the remainder of the purchase contract; is that true?

THE DEFENDANT: Correct.

THE COURT: Sir, is there anything in your factual basis that is not true?

THE DEFENDANT: No.

THE COURT: Is there anything you would like to add to or delete from your factual basis?

THE DEFENDANT: No.

THE COURT: Has your lawyer done a good job helping you?

THE DEFENDANT: He has.

THE COURT: Mr. Altman, is there anything you would like to place on the record as it relates to the factual basis?

MR. ALTMAN: No, Your Honor. I think it's been covered pretty well, thank you.

THE COURT: Ms. Chang or Ms. Minder, is there anything either one of you ladies want to add or that I missed in this plea agreement?

MS. CHANG: No, Your Honor, thank you.

THE COURT: Sir, would you like to give up your right to go to trial so you can enter pleas of guilty this afternoon?

THE DEFENDANT: I do.

THE COURT: Sir, as to Count No. 1 of the Superseding Indictment charging you with Conspiracy to Violate the Arms Export Control Act and the International Traffic and Arms Regulation in violation of Title 18, United States Code §371, which would constitute a Class D felony offense, sir, how do you wish to plead, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: As to Count 2 of this Superseding Indictment charging you with Conspiracy to Violate the Export Control Reform Act and the Export Administrative Regulations in violation of Title 50, United States Code, §4819(a)(1) and its sub parts that make it a Class C felony, as well as Title

15, Code of Federal Regulation Part 732.2(b)(1) and 774 Supplement No. 1, sir, how do you wish to plead, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: Sir, this Court accepts both of your pleas of guilty. This Court also finds that you've knowingly, intelligently and voluntarily entered pleas of guilty and that you understand the charges in your case and, also, there's a factual basis for both counts that you pled guilty to this afternoon and I also find that you're competent to enter pleas of guilty.

Sir, it's ordered that a Presentence Report be prepared in your case and your sentencing is set for Monday, October 27th, 2025, at 2:00 o'clock in the afternoon. I'll set aside two hours.

Any motions that have been filed on your behalf, sir, are denied as moot as to you only. The trial that's currently set for the 23rd of September of 2025 and the pretrial conference set for the 16th of September of 2025, they're both vacated as to you only.

This Court accepts the plea agreement and your plea of guilty today. Is there anything else from the defense?

MR. ALTMAN: No, Your Honor, Thank you.

THE COURT: You're very welcome.

Is there anything else from the Government?

MS. CHANG: No, Your Honor, Thank you.

THE COURT: Your very welcome.

The hearing's adjourned.

*(Whereupon the proceedings adjourned.)*

***REPORTER'S CERTIFICATION***

I, TERI VERES, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter for the United States District Court for the District of Arizona.

I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control.

DATED at Phoenix, Arizona, this 8th of August, 2025.

s/Teri Veres
TERI VERES, RMR, CRR