UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, Plaintiff, vs. Abraham Chol Keech, Defendant. | ) | 2:24-cr-00394-SPL-1<br>Phoenix, Arizona<br>August 25, 2025 |

BEFORE: THE HONORABLE STEVEN P. LOGAN, JUDGE

# REPORTER'S TRANSCRIPT OF PROCEEDINGS

## CHANGE OF PLEA

Official Court Reporter:
Elva Cruz-Lauer, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc. 33
Phoenix, Arizona 85003
(602) 322-7261

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

A P P E A R A N C E S

For the Government:

U.S. Attorney's Office
By: AMY C. CHANG, ESQ.
RAYMOND K. WOO, ESQ.
M. BRIDGET MINDER, ESQ.
40 North Central Avenue, Suite 1800
Phoenix, AZ 85004

For the Defendant Abraham Chol Keech:

Law Office of Richard C. Bock
By: RICHARD C. BOCK, ESQ.
100 N. Stone Ave., Ste. 1003
Tucson, AZ 85701

Law Office of Dominic Rizzi P.L.L.C.
By: DOMINIC RIZZI, ESQ.
100 N. Stone Ave., Ste. 600
Tucson, AZ 85701

P R O C E E D I N G S

THE CLERK: We're on the record in CR24-394 United States of America versus Abraham Chol Keech, before the Court for a change of plea.

MS. CHANG: Good afternoon, Your Honor. Amy Chang, Raymond Woo, and Bridget Minder for the United States.

THE COURT: Good afternoon to all of you.

MR. BOCK: Good afternoon, Your Honor. Richard Bock and my co-counsel Dominic Rizzi on behalf of Abraham Keech, standing next to me. He's in custody, prepared to do his change of plea.

THE COURT: Good afternoon to all of you as well.

Mr. Keech, this is the time set for your change of plea hearing.

Sir, please raise your right hand to be sworn.

(Defendant is sworn by the Courtroom Deputy.)

THE COURT: Sir, what is your full name?

THE DEFENDANT: Abraham Chol Keech.

THE COURT: And, sir, is your name spelled correctly on the plea agreement?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Sir, it's very important that you answer all of my questions truthfully. If you don't, the U.S. Attorney's Office, they can prosecute you for the crime of perjury or false statement, and both of those crimes carry

prison sentences; do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Mr. Bock or Mr. Rizzi, can you please lay the foundation as to how the plea agreement was explained to your client?

MR. BOCK: Judge, we had an earlier plea agreement that was explained to the client. It was left with him at CCA. We visited with him many times at CCA.

And this plea agreement is basically a mirror image of the original plea agreement with just two small changes, which again, were explained to him today, and also by the U.S. Attorney's Office.

THE COURT: Thank you very much.

And Mr. Keech, how old are you?

THE DEFENDANT: I am 45.

THE COURT: And, sir, how much education do you have?

THE DEFENDANT: I have BSW, bachelor of social work.

THE COURT: And, sir, in the last 48 hours, have you used any drugs, prescription medication, alcohol, or anything that would make it difficult for you to understand what's being said this afternoon?

THE DEFENDANT: Nothing, I never used drugs.

THE COURT: Sir, have you ever been treated for a mental or an emotional disorder?

THE DEFENDANT: No, Your Honor.

THE COURT: Does either counsel have reason to believe that the defendant is not competent to enter a plea?

MS. CHANG: No, Your Honor. Thank you.

MR. BOCK: No, Your Honor.

THE COURT: Sir, I have your plea agreement here. It's a 15-page document. On page number 15 I recognize the signature of Ms. Chang. On page number 14, I recognize the signatures of both of your lawyers.

And, sir, on page number 13, above your typewritten name, I see another signature. Sir, did you sign off on this plea agreement?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Sir, you speak the English language really well, do you read it and write it just as well?

THE DEFENDANT: Yes.

THE COURT: Did you have a chance to sit down by yourself and with your lawyers to go through each and every section of this plea agreement?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Did your lawyers answer any and all questions about your plea agreement?

THE DEFENDANT: Yes.

THE COURT: Do you understand the entire plea agreement?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Sir, has anyone forced, threatened, or coerced you into entering into this plea agreement?

THE DEFENDANT: No, Your Honor.

THE COURT: Has anyone made you any promises to get you to enter into this plea agreement, other than the promises that are contained in your plea agreement?

THE DEFENDANT: No, Your Honor.

THE COURT: Sir, are you pleading guilty voluntarily because you believe you are guilty of this crime?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Sir, your plea agreement, it contemplates the following: It indicates that you will plead guilty to count 1 of the superseding indictment in case number 24-00394, and the crime is conspiracy to violate the Arms Export Control Act, and the International Traffic and Arms Regulations, in violation of Title 18 United States Code Section 371, which makes it a class D felony offense.

And count 2 of the superseding indictment, charging you with conspiracy to violate the Export Control Reform Act and the Export Administration Regulations in violation of Title 50, United States Code, Sections 4819(a)(1), (a)(2)(D) and (b), as well as Title 15 of the Code of Federal Regulations, Parts 736.2 (b)(1) and 774, Supplement Number 1, which would make it a class C felony offense.

Sir, are these the two crimes that you wish to plead

guilty to?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Sir, a violation under 18 United States Code Section 371 is punishable by a maximum fine of $250,000 and a maximum term of imprisonment of five years or both and a term of supervised release of three years.

Sir, a violation of 50 U.S.C. Section 4819(a)(1) and (a)(2)(D) and (b), and 15 C.F.R. Parts 736.2 (b)(1) and 774 is punishable by a maximum fine of a million dollars and a maximum term of imprisonment of 20 years or both and a term of supervised release of three years.

Sir, the maximum term of probation on both counts is five years, including a minimum term of one year if probation is imposed.

Sir, there's also a fine pursuant to 18 U.S.C. Section 3572, unless I find that the fine is not appropriate.

Sir, do you understand and agree with the potential punishments that are listed on page 2 of your plea agreement?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And, sir, you have talked to your lawyers and they have answered all of the questions about those potential punishments?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Sir, on page number 3, it also indicates that you will be required to pay $100 special assessment for

each count of conviction; do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you also understand that the sentencing guidelines are advisory; do you understand that?

THE DEFENDANT: Yes.

THE COURT: Sir, have you had a chance to review the entire Federal Sentencing Table with your lawyer?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand the Federal Sentencing Table?

THE DEFENDANT: Yes, Your Honor.

THE COURT: I want to take you to page number 3, line number 9.

There's a stipulation, and it indicates that this agreement is contingent on a plea by your codefendant. And it says pursuant to Federal Rule of Civil Procedure 11(c)(1)(C), the parties agree that this plea agreement is contingent on a guilty plea being entered by your codefendant, Mr. Ajak, and Mr. Ajak's guilty plea being accepted by this court; do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you agree with everything that's contained in section 3A of the plea agreement?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you've gone through that entire

section 3A with your lawyers?

THE DEFENDANT: Yes, Your Honor.

THE COURT: If you look at 3B on line 21 of page 3, there's a stipulation. It says: Ineligibility for adjustment for certain zero point offenders.

And it goes on to state that you and the United States Government stipulate that you are not eligible for a downward adjustment pursuant to Sentencing Guidelines Section 4C1.1(a)(7) because your offense involved possessing, receiving, purchasing, transporting, or transferring a firearm or other dangerous weapon or inducing another to do so; do you agree with that section, sir?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you've talked to your lawyers about that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you want to enter into that stipulation with the United States Government?

THE DEFENDANT: Yes, Your Honor.

THE COURT: The next stipulation is on line 27. It indicates that pursuant to 11(c)(1)(C), that you and the government stipulate that your sentence shall not exceed the high end of the sentencing guidelines range as calculated under Sentencing Guidelines Section 1B1.1(a).

It goes on to indicate that this stipulated sentencing

cap will not change based on departures considered under Sentencing Guidelines Section 1B1.1(b).

And it also indicates that nothing in this agreement shall preclude you from moving for a downward departure, variance, or sentence below the stipulated cap, or from this court imposing a sentence below the stipulated cap; do you understand and agree with all of that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: On page number 4, line number 6, there's another stipulation. It's about foreign travel during supervised release. It indicates that you and the federal United States Government stipulate that if during your term of supervised release you request permission from this court and/or U.S. Probation to leave the United States to return to Uganda and/or another country that you have appropriate status to enter, the government will not oppose such requests provided that you, number one, comply with the conditions of your supervised release regarding obtaining approval before leaving the judicial district; and number 2, that you have not violated any other terms of your supervised release at the time that you seek permission to travel.

If you return to the United States during the term of supervised release, you must also report to your probation officer within 72 hours of your returning to the United States; do you agree with all of that that's laid out on page 4,

subpart D.

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you've talked to your lawyers about that entire paragraph?

THE DEFENDANT: Yes.

THE COURT: Sir, the next part is E on page number 4, acceptance of responsibility. Basically, if you sit down with the probation officer, and if you provide the officer with truthful information about how you violated the law, you could receive up to three levels off based on your acceptance of responsibility; do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Sir, I am not required to go along with any recommendations in your plea agreement, and if I reject a recommendation, you cannot withdraw from your plea or from your plea agreement.

However, any stipulation that's in your agreement, it's a promise, and if the promise is not kept, that means you can get out of this plea agreement; do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you've talked to both of your lawyers about that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And they've answered all the questions about that?

THE DEFENDANT: Yes.

THE COURT: I want to take you to page number 5, line number 1. It says you'll make a full accounting of all of your assets that you have any legal or equitable interests and that you shall not sell, hide, waste, spend, or transfer any of those assets or property before sentencing, without the prior approval of the United States Government.

It also indicates that you also expressly authorize the U.S. Attorney's Office to immediately obtain a credit report as to you, in order to evaluate your ability to satisfy any financial obligation imposed by this court.

It also indicates that you'll make a full accounting of all of your current and projected assets to the U.S. Probation Office immediately and prior to the termination of your supervised release or probation.

And such disclosures will be shared with the U.S. Attorney's Office, including the financial litigation unit for any purpose.

Have you gone through that entire G paragraph on page 5.

THE DEFENDANT: Yes, Your Honor.

THE COURT: Have your lawyers answered any and all questions about that paragraph?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Section 4 on page 5 indicates that

pursuant to your agreement you have with the United States Government and Federal Rule of Criminal Procedure 11(c)(1)(A), that the United States at the time of sentencing shall ask me to dismiss counts 3 and 4 of the superseding indictment as to only you in case number CR-24-00394.

It also indicates in subpart B that the U.S. Attorney's Office will not prosecute you for any offenses committed by you and known by the United States as detailed in the discovery provided by the United States to you during this case in connection with the charges in this superseding indictment.

It also indicates that this agreement does not in any manner restrict the actions of the United States in any other district or bind any other U.S. Attorney's Office.

Sir, do you understand Sections 4A through C in your plea agreement?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You've talked to your lawyers about that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Section 4C means your agreement is only good here in Arizona. There's four offices in Arizona. This is only good for the District of Arizona; do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: After I review your plea agreement, if I

conclude that any provision is inappropriate, I can reject your plea agreement and give you an opportunity to withdraw your guilty plea; do you understand that, sir?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Have you read through the subpart of 5B with your lawyer?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And it indicates that your guilty plea or plea agreement, if it's rejected, withdrawn, vacated, or reversed at any time, this agreement shall be null and void, and that the United States Government shall be free to prosecute you for all crimes of which the United States Government has knowledge, and any charges that have been dismissed because of this plea agreement shall automatically be reinstated, meaning those prior charges; do you understand all of that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You've gone through all of section 5B with your lawyers?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And they've answered all of your questions?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Sir, if your plea is accepted and if I impose a sentence permitted by the terms of your plea

agreement, you will not be permitted to withdraw from your plea or challenge your judgment and sentence on appeal or in a collateral proceeding with the exception of an appeal based on ineffective assistance of counsel or prosecutorial misconduct; do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Sir, you also reserve the right to file what's called a motion for a compassionate relief and to appeal the denial of that motion to the Ninth Circuit Court of Appeals; do you understand all of that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Sir, have you gone through section 7 with your lawyers that indicates that the United States Government retains the unrestricted right to provide information and make any and all statements it deems appropriate to the U.S. Probation Office and to this court in connection with this case; do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you agree with all of that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Sir, there's a forfeiture section that's next, and it indicates that you agree to forfeit all interest in any assets that you own or -- you own or over which you have exercise and control, directly or indirectly, as well as any property that is traceable to, derived from, fungible with, or

a substitute for property that constitutes the proceeds of the offenses or which were used to facilitate the commission of the offenses, to include $1,972,975 in United States currency seized from the bank account of U.S. Company-1 on March the 1st of 2024 -- I'm sorry 20 -- yes, March the 1st of 2024; sir, do you agree with that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you've talked to your lawyers about the U.S. currency, the $1,972,975?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you agree to waive all interest in any such assets in any administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal; is that correct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you also agree to consent to the entry of orders of forfeiture for such property and waive the requirements of the Federal Rules of Criminal Procedural 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment; do you agree to all of that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you've gone through all of paragraph C with your lawyers?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you understand all of paragraph C?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Section D on page number 8 indicates that forfeiture of your assets should not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty that this court may impose on you in addition to forfeiture.

It goes on to indicate that this agreement does not preclude the United States Government from instituting any civil or administrative forfeiture procedures as may be appropriate now or in the future.

Sir, do you understand that entire paragraph?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you've gone through it with your lawyers?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And they answered all of your questions about paragraph D?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Paragraph E indicates that you agree to waive all constitutional and statutory challenges in any manner, including direct appeal, habeas corpus, double jeopardy, and any other means to any forfeiture imposed as a result of this guilty plea or any pending or completed

administrative or civil forfeiture actions, including that the forfeiture constitutes an excessive fine or punishment; do you agree with all of that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Have you gone through the entire paragraph E on page numbers 8 and 9 with both of your lawyers?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And they've answered all of your questions about paragraph E?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Paragraph F indicates that you agree not to file a claim to any of the listed property in any civil proceeding, administrative or judicial proceeding which may be initiated, and that you further agree that you will not contest civil, administrative or judicial forfeiture of the listed property; do you agree with that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: It also indicates that you agree to waive your right to notice of any forfeiture proceeding involving this property, and you agree not to file a claim or assist others in filing a claim in that forfeiture proceeding; do you agree with that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you've gone through paragraph number F with your lawyers?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And they've answered all of your questions about paragraph F?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Paragraph G indicates that the government reserves its right to proceed against any remaining assets not identified either in this plea agreement or in any civil actions which are being resolved along with your plea of guilty, including any property in which you have any interest or control, if said assets, real or personal, tangible or intangible were involved in these offenses; do you understand paragraph G?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Have you gone through it with your lawyers?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And they've answered all of the questions that you've had about paragraph G?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Paragraph H indicates that you agree to waive and you also agree to hold the government and its agents and employees harmless from any and all claims whatsoever in connection with the seizure, forfeiture, and disposal of the property described in this plea agreement; is that correct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: It also says, sir, that without limitation, you understand and agree that by virtue of this plea of guilty, you will waive any rights or cause of action that you might otherwise have had to claim that you are substantially -- or you are the substantially prevailing party for the purpose of recovery of attorney fees and other litigation costs in any related civil forfeiture proceedings pursuant to 28 United States Code Section 2465(b)(1); is that correct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And, sir, is it true that you went through all of the paragraph H on page 9 with both of your lawyers?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And they answered all of your questions that you had about that paragraph?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Sir, after you serve your prison sentence, you will then be placed on what's called supervised release, and you will be required to follow any conditions imposed by this court.

If you violate any of those conditions, you can receive more time in prison in this case; do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Mr. Bock, is your client currently on

probation, parole, or any other punishment?

MR. BOCK: No, Your Honor.

THE COURT: And sir, are you a U.S. citizen?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Sir, if you commit another crime against the United States after this one, your conviction in this case could be used to make whatever sentence you receive for the new offense even longer or harsher than it otherwise would be; do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Mr. Keech, as a person accused of a crime here in the United States, you have certain rights that are guaranteed to you by the U.S. Constitution.

You have a right to remain silent and to maintain your innocence through each phase of your case, as well as to have a lawyer represent you during each stage of your case.

You have a right to confront and cross-examine all of the government witnesses. You can present your own evidence and compel witnesses to come to court and testify in your behalf.

Sir, the burden of proof is always on the United States Government to prove that you're guilty. It never shifts to you to prove that you're innocent, and the government must prove each and every element of the crime beyond a reasonable doubt.

Sir, proof of guilt beyond a reasonable doubt means that Ms. Chang and her colleagues must come into this federal courtroom and provide the jury members with sufficient evidence that would leave each and every jury member firmly convinced of your guilt before any of those jury members can vote in finding you guilty.

Mr. Keech, do you understand your constitutional rights here in the United States of America?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Ms. Chang, could the government avow that if this matter proceeded to trial you could prove each and every element beyond a reasonable doubt?

MS. CHANG: Yes, Your Honor.

THE COURT: Ma'am, can you place those elements on the record, please?

MS. CHANG: Yes, Your Honor. To prove the crime of conspiracy to violate the AECA and the ITAR, which is charged in count 1, the United States must prove, 1, that beginning no later than on or about February 20th, 2023, and continuing to on or about March 1st, 2024, in the District of Arizona and elsewhere, an agreement was formed between two or more persons to willfully export or cause to be exported from the United States a defense article listed on the United States Munitions List without obtaining the requisite license or written approval from the United States;

2, the defendant became a member of the conspiracy knowing that one of its objects was to commit the crime of exporting or causing the export of defense articles without lawful authority and intended to help accomplish it;

And 3, one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

To prove count 2, which is conspiracy to violate the ECRA and the EAR, the United States must prove the following:

First, beginning no later than on or about February 20th, 2023, and continuing to on or about March 1st, 2024, in the District of Arizona and elsewhere, an agreement was formed between two or more persons to willfully export or cause to be exported from the United States an article listed on the Commerce Control List;

Second, without obtaining a license or written approval for the export from the United States Department of Commerce;

Third, the defendant became a member of the conspiracy knowing that one of its objects was to commit the crime of exporting or causing the export of Controlled Articles without lawful authority and intended to help accomplish it;

And fourth, the defendant did so willfully.

THE COURT: Ms. Chang, thank you very much.

Mr. Keech, the federal prosecutor, she just stood up

and she placed the elements of both of the counts that you intend to plead guilty to. She placed all of those elements on the record. Have you gone through all of those elements of both of those crimes with your lawyers.

THE DEFENDANT: Yes, Your Honor. What I just want to say is that February 20th is when I get involved.

THE COURT: I'm sorry?

THE DEFENDANT: February 20th, 2023 is when I got involved in this, but it goes back to 2016, 2017. It has been going on for that long because there is a civil war in my birth country, South Sudan.

THE COURT: Okay, sir -- I'm sorry. Go ahead, please.

THE DEFENDANT: That is how this thing started. So it goes back all the way to 2016, but 2023 is when I got involved.

THE COURT: I appreciate all of that.

Did you have a chance to sit down with your lawyers and go through all of what's called Rule 16 discovery, also known as the evidence in the case?

THE DEFENDANT: Yes.

THE COURT: When you sat down with the lawyers, your lawyers, and went through all of the evidence in the case, after going through both of these counts that you are attempting to plead guilty to, when they explained the evidence, you read through the evidence, you saw the evidence in every form, are you convinced that the United States

Government has all of the evidence they would need to prove that you are guilty beyond a reasonable doubt in both of these counts?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Sir, in your own words, tell me exactly why you believe you're guilty of this offense. In other words, what did you do?

THE DEFENDANT: I got involved in a civil war in my birth country of South Sudan, and I was sent to Arizona to check on the company that was to supply arms to the opposition in South Sudan.

THE COURT: And what was the period of time that you were involved?

THE DEFENDANT: February 20th, 2023 to March 1st, 2024.

THE COURT: And you indicated that you came from the South Sudan to the United States of America, specifically here in Arizona?

THE DEFENDANT: Yeah, I was on the way to come to America, but I was sent purposely to come to Arizona for this -- I'm from Salt Lake City, but I was sent to --

THE COURT: I didn't understand the last response. Slow down.

THE DEFENDANT: I am originally from Salt Lake City.

THE COURT: You're from Solid City?

THE DEFENDANT: Salt Lake City, Utah. But I was sent to Arizona --

THE COURT: Whoa, whoa, whoa, whoa. Stop.

He's from where?

THE DEFENDANT: Huh?

THE COURT: Solid City? What is that?

MR. RIZZI: Salt Lake City, Utah.

THE COURT: Salt Lake City? Oh, just slow down if you can, okay?

THE DEFENDANT: Okay. I am from Salt Lake City, Utah, but what happened to connect Arizona is I was sent to Arizona to come and check on the company that was to supply the arms.

THE COURT: Okay. Did you make it to Arizona at some point during the February 2023 to March 1st, 2024 time frame?

THE DEFENDANT: Yes.

THE COURT: You conspired with who?

THE DEFENDANT: Peter Ajak.

THE COURT: And others?

THE DEFENDANT: And others.

THE COURT: To do what?

THE DEFENDANT: To supply the weapons to South Sudan.

THE COURT: So that was purchase, export or caused to be exported various weapons and ammunition from the United States to the Republic of South Sudan; is that correct?

THE DEFENDANT: Yes, but not to the government of

South Sudan. It was to the oppositions, Your Honor.

MR. BOCK: So, Judge, may I say something?

THE COURT: Of course you can.

MR. BOCK: There was no export license, and Mr. Keech was negotiating with an undercover agent for the government. There were discussions. There was ledgers that had prices for the weapons. Mr. Keech came down, looked at a cache of weapons in Phoenix and got arrested.

THE COURT: Okay. I appreciate that.

Let's go through -- I need to go through the entire factual basis with you, Mr. Keech; do you understand that?

THE DEFENDANT: Yeah, yeah.

THE COURT: And your coconspirators and you wanted to cause the illegal export of these weapons and ammunition to arm opposition groups seeking to effect a nondemocratic regime change; is that correct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And that was in South Sudan?

THE DEFENDANT: Yes.

THE COURT: And these weapons and ammunition included AK-47 rifles, fully automatic; is that right?

THE DEFENDANT: Yes, Your Honor.

THE COURT: PKM rifles, fully automatic; is that right?

THE DEFENDANT: Yes, Your Honor.

THE COURT: RPG-7 launchers; is that correct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: PG-7 HE rounds; is that correct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: FIM-92 Stinger missile systems; is that correct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: M-67 hand grenades; is that correct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: PG-7VT/PG-7T AT rounds; is that correct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: PSL sniper rifles; is that true?

THE DEFENDANT: Yes, Your Honor.

THE COURT: 7.62 by 39 millimeter ammunition, is that true?

THE DEFENDANT: Yes, Your Honor.

THE COURT: 7.62 by 54 millimeter ammunition; is that true?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you know that the total cost for the weapons and ammunition was what?

THE DEFENDANT: $3,972,975.

THE COURT: Is it true that these weapons and ammunition are designated as defense articles on the United States Munitions List or listed on the Commerce Control List?

THE DEFENDANT: Yes, Your Honor. Though I did not know much about this, the weapon system. I am not a military person.

THE COURT: But you knew a license was required from the U.S.?

THE DEFENDANT: Yes, yes.

THE COURT: U.S. State Department, correct?

THE DEFENDANT: Yes.

THE COURT: Or the Department of Commerce, correct?

THE DEFENDANT: Yes.

THE COURT: And that's before they could be exported from the United States to the South Sudan; is that right?

THE DEFENDANT: Yes, Your Honor.

THE COURT: So is it true that neither you or anyone else connected with the scheme had obtained such a license; is that true?

THE DEFENDANT: Say that again, Your Honor.

THE COURT: Did anyone have a license to send these weapon systems or ammunition to South Sudan?

THE DEFENDANT: Nobody had a license.

THE COURT: So you nor none of your coconspirators had a license?

THE DEFENDANT: Yeah, to my understanding is that the company, the undercover company, was the one to obtain the license.

MR. BOCK: Judge, there was no license. When he says, "the company," this was part of the undercover --

THE DEFENDANT: Yeah.

MR. BOCK: -- operation.

THE COURT: Correct.

Is that true, Mr. Keech?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you know that now because of all of the evidence you reviewed?

THE DEFENDANT: Yes.

THE COURT: But you know and understand you never had a license to export arms or ammunition to South Sudan, correct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Sir, I want to focus your attention to line number 12 of page 11. There's an example that on December the 22nd of 2023, an undercover agent in Phoenix, Arizona, who was posing as a weapons dealer told you what?

THE DEFENDANT: That the shipping weapons was illegal.

THE COURT: So shipping of --

THE DEFENDANT: -- the weapons was illegal.

THE COURT: So shipping of the weapons and ammunition was illegal?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Why is that?

MR. BOCK: She had no license.

THE DEFENDANT: Because of the license.

THE COURT: Because you didn't have a license to do it?

THE DEFENDANT: Yes.

THE COURT: Is that true?

THE DEFENDANT: Yes. Like I told you, the negotiation actually started way back before I got involved. So most of the detail I just discovered during the discovery, but, yes, it is that.

THE COURT: But you understand that you entered into the conspiracy and never exited the conspiracy so you're responsible? You understand that from discussions with your lawyers, right?

THE DEFENDANT: Yes.

THE COURT: So you understand that you were charged under a federal crime, under 371 conspiracy, correct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Let's focus on line 14. It says similarly, during February the 22nd of 2024 a meeting in Phoenix, Arizona, the undercover agent told you that the weapons purchase was illegal; is that correct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And he also indicated -- or she indicated that the weapons required export licenses that the agent had not obtained; do you recall that being said?

THE DEFENDANT: Yes, Your Honor.

MR. BOCK: It also indicates that the agent would have to bribe the United States military members to get the weapons from the United States to the South Sudan; do you remember hearing all of that?

THE DEFENDANT: And that's when I actually noted that we are in trouble.

THE COURT: I'm sorry?

THE DEFENDANT: This is when I realized that we are going to be in trouble, when he said that you have to bribe the U.S. military.

THE COURT: That's when you knew it was illegal?

THE DEFENDANT: Yes.

THE COURT: And you knew you would be in trouble if you got caught?

THE DEFENDANT: Of course, yes.

THE COURT: Sir, line 18 indicates that while planning to purchase and export of the $3,972,975 in weapons and ammunition, your coconspirator Mr. Ajak and you, did not believe that you two were doing so on behalf of or with permission from an authorized federal government official or agent of the federal government; is that right?

MR. BOCK: That's true.

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay, I can't have the lawyer speaking the

answer into the microphone.

Sir, if you need to talk to your client, just ask for a second and you can step away.

I will ask the question again so you can listen and answer the question, okay?

THE DEFENDANT: Okay.

THE COURT: If you focus on page number 11, line 18 it indicates: When planning the purchase and export of the $3,972,975 in weapons and ammunition, your coconspirator Mr. Ajak and you did not believe that you two were doing so on behalf of or with permission from an authorized federal government official or agent of the federal government; is that true?

THE DEFENDANT: Yes, Your Honor.

THE COURT: So you knew that you and your coconspirator, Mr. Ajak, would be violating federal law?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Line 20 says: Rather, because we knew that exporting the weapons and ammunition without the required licenses was illegal, you and Ajak agreed to disguise the shipments as what?

THE DEFENDANT: As humanitarian.

THE COURT: As humanitarian activity?

THE DEFENDANT: Yes.

THE COURT: Where?

THE DEFENDANT: In the refugee camps.

THE COURT: I'm sorry?

THE DEFENDANT: In South Sudan, refugee camps.

THE COURT: Refugee camps?

THE DEFENDANT: Yes, Your Honor.

THE COURT: This effort included creating what?

THE DEFENDANT: I have to read it sorry, Your Honor.

THE COURT: Sure. It's your factual basis. Go ahead. Read it. Take your time.

THE DEFENDANT: This include the invoice for consulting services.

THE COURT: Sir, it was a fake invoice for $3.9 million dollars, correct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: So you could hide the fact that you were actually buying weapons and ammunition where you were trying to have a fake invoice that indicated it was for "consulting services;" is that right? And South Sudan refugee camps, assistance items for humanitarian activities; is that right?

THE DEFENDANT: Yes, Your Honor. What I just want to clarify is that some of the discussion and participation, sometimes I was limited to some discussion.

THE COURT: Sorry, sometimes you were limited to what?

THE DEFENDANT: I was limited to some of the discussion between Ajak and the undercover. So some of them I

actually seen in the discovery.

THE COURT: Okay. And again, you know and understand that you and your coconspirator, indicted and unindicted, were conspiring to move over $3.9 million in weapons and ammunition to South Sudan; is that right?

THE DEFENDANT: I understand that, yes, Your Honor.

THE COURT: And you agree that you were part of this conspiracy, all of it?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And let me focus your attention to line number 22. It says: This effort included creating a fictitious $3.9 million invoice for consulting services related to human rights, humanitarian and civil engagements; is that true that you did that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And when it says, "this effort included," who was the one that was making up this fictitious invoice?

THE DEFENDANT: Most of this was done by the team in New York and D.C.

THE COURT: What team in New York and D.C., were they unindicted coconspirators or agents?

THE DEFENDANT: No. The agents and Ajak and then the team in New York. Most of these writing and the money, I was not involved in that.

THE COURT: But you knew it was happening?

THE DEFENDANT: Yes. Yes, Your Honor. I got copies of the --

THE COURT: You had copies of the fake invoice for 3.9 million?

THE DEFENDANT: Yes, it was shared with me after that, yes.

THE COURT: I'm sorry?

THE DEFENDANT: It was shared with me after that.

THE COURT: Oh, it was shared with you?

THE DEFENDANT: Yes.

THE COURT: Okay. And you knew in fact that the payments would be for the weapons and ammunition as we've talked about before; is that correct?

THE DEFENDANT: Yes. Yes, Your Honor.

THE COURT: Sir, also on page number 11, it indicates that your coconspirators also solicited funds to pay for the weapons and ammunition and other expenses related to effecting a nondemocratic regime change; is that correct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: It goes on to indicate that between -- or on or about February 19th, 2024 and February 26th of 2024, your coconspirators caused $2 million to be transferred to the undercover agent in partial payment for the weapons and ammunition; is that correct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And is it also true that this $2 million was paid for in four separate installments and was made in furtherance of the conspiracy; is that right?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Is it also true that another $1,972,975, which was seized from the bank account from U.S. Company-1 would have been used for what?

THE DEFENDANT: For buying the weapons, Your Honor.

THE COURT: And where did this money come from? When it says you "solicited the funds to pay for the weapons," solicited the funds from who?

THE DEFENDANT: From the team in New York, and that part I was not involved. I was not in New York, Your Honor.

THE COURT: All right. Sir, I want you to take a moment and go back to page Number 10, the bottom, which is line 27, page number 11, the entire page number 11, as well as page number 12, lines 1 through 3.

Is there anything in there you would like me to go over again?

THE DEFENDANT: Nothing in particular, Your Honor.

THE COURT: Is all of that accurate, all of the factual basis?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Is there anything you would like to add to or delete from the factual basis?

THE DEFENDANT: Nothing at the moment, Your Honor.

THE COURT: Well, there is no -- there's no other moment to add to or delete from. It's either your factual basis or it's not. Is it your factual basis?

THE DEFENDANT: Yes.

THE COURT: Is all of the information in the factual basis accurate?

THE DEFENDANT: Yes.

THE COURT: Is this your participating in this crime?

THE DEFENDANT: Yes, your Honor.

THE COURT: Is there anything you would want to change as it relates to memorializing your participation in this crime?

THE DEFENDANT: Nothing, Your Honor.

THE COURT: Sir, have your lawyers done a good job helping you in this case?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions about your participation as it relates to this conspiracy that you were involved with?

THE DEFENDANT: No. No questions, Your Honor.

THE COURT: Sir, would you like to give up your rights to go to trial so that you could enter a plea of guilty this afternoon?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Mr. Keech, as to count 1 of the superseding indictment, charging you with conspiracy to violate the Arms Export Control Act and the International Traffic and Arms Regulations, in violation of Title 18 United States Code Section 371 which is a class D felony offense, sir, how do you wish to plead, guilty or not guilty?

THE DEFENDANT: I am guilty.

THE COURT: As to count 2 of the superseding indictment charging you with conspiracy to violate the Export Control Reform Act and the Export Administration Regulations, in violation of Title 50, United States Code, Sections 4819(a)(1), (a)(2)(D) and (b) and Title 15 Code of Federal Regulations, Part 736.2 (b)(1) and 774, which would constitute a class C felony, sir, how do you wish to plead, guilty or not guilty?

THE DEFENDANT: Guilty, Your Honor.

THE COURT: Mr. Keech, this Court accepts both of your pleas of guilty. This court also finds that you knowingly, intelligently, and voluntarily entered pleas of guilty of both of those counts of your superseding indictment, and that you voluntarily entered pleas of guilty and that you understand that there's a factual basis for your pleas on both of those counts, and I also find that you are competent to enter pleas of guilty.

Sir, I will order a presentence report in your case.

This Court accepts your plea of guilty and your plea agreement today.

You will be sentenced Monday the 17th of November at 10:30 in the morning, unless I have a conflict from either side.

Any conflict from the government?

MS. CHANG: No, Your Honor.

THE COURT: Defense?

MR. BOCK: Judge, we have a state court trial that is set for the week of the 17th.

THE COURT: Okay. Let me get some additional dates here.

Counsel, see if you are available 24th of November?

MR. BOCK: Yes, Your Honor.

THE COURT: Is the government?

MS. CHANG: Yes, Your Honor. Thank you.

THE COURT: You're very welcome.

Mr. Keech, you will get sentenced the 24th of November of 2025 at 10:30 in the morning.

As I indicated before, I've accepted your plea agreement and your plea of guilty. Any pending motions in the case will be denied as moot.

Is there anything else from the United States Government?

MS. CHANG: Just one moment, Your Honor.

THE COURT: Is there anything else from the defense?

MR. BOCK: Just that the September 23rd trial date, should we vacate that?

THE COURT: That's correct. The trial currently set for the 23rd of September of 2025 as to both defendants will be vacated, and the pretrial conference set for the 16th of September at 9:00 a.m. for both defendants will also be vacated.

Is there anything else from the defense?

MR. RIZZI: There is just one more matter, Your Honor. Last week the defense team did file a motion to withdraw as counsel, but we are withdrawing that motion and we are going to stay on the case. We've worked everything out with Mr. Keech.

THE COURT: Well, the fact that you are here and we just spent an hour on the record, I kind of figured that I would be safe in saying that every outstanding motion is denied as moot, but I appreciate that clarification.

Is there anything else?

MR. BOCK: No, thank you, Judge.

THE COURT: Is there anything from the government -- any government lawyer?

MS. CHANG: No, Your Honor. Thank you very much.

THE COURT: You are very welcome. You all have a wonderful day.

(Proceedings concluded.)

C E R T I F I C A T E

I, ELVA CRUZ-LAUER, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter for the United States District Court for the District of Arizona.

I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control.

DATED at Phoenix, Arizona, this 26th day of August, 2025.

s/Elva Cruz-Lauer
Elva Cruz-Lauer, RMR, CRR