**KURT M. ALTMAN, P.L.C.**
Kurt M. Altman (015603)
12621 N. Tatum Blvd., #102
Phoenix, AZ 85032
Admin@altmanaz.com
Phone: (602) 689-5100
*Attorneys for Defendant*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America,<br>Plaintiff,<br>v.<br>Peter Biar Ajak,<br>Defendant. | CR-24-00394-PHX-SPL-2<br><br>**DEFENDANT'S RESPONSE TO UNITED STATES' OBJECTION TO DRAFT PRESENTENCE INVESTIGATION REPORT**<br><br>Assigned to Honorable Steven P. Logan |

Peter Biar Ajak, by and through undersigned counsel, hereby responds to the United States' Objection to Draft Presentence Investigation Report and requests this Court Deny/Overrule the objection.

This Response and its requested relief are supported by the attached Memorandum of Points and Authorities.

///

///

RESPECTFULLY SUBMITTED this 7tht day of October 2025.

**KURT M. ALTMAN, P.L.C.**

*/s/ Kurt M. Altman*___________
Kurt M. Altman
*Attorneys for Defendant*

I hereby certify that on the 7th day of October 2025,

I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Honorable Steven P. Logan
United States District Court Judge
logan_chambers@azd.uscourts.gov

Amy Chang
Assistant United States Attorney
Amy.Chang@usdoj.gov

Raymond Woo
Assistant United States Attorney
Raymond.Woo@usdoj.gov

M. Bridget Minder
Assistant United States Attorney
Bridget.Minder@usdoj.gov

Jonathan P. Spano
U.S. Probation Officer
Jonathan_Spano@azd.uscourts.gov

By: */s/ Kurt M. Altman*__________

KURT M. ALTMAN, P.L.C.
12621 N TATUM BLVD., #102
PHOENIX, AZ 85032
(602) 689-5100

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Peter Ajak has no objections to the Draft Presentence Investigation Report (DKT 169, hereinafter "PSR"). As that report indicates Mr. Ajak should not be given a 2-level upward adjustment pursuant to U.S.S.G. § 3B1.1(c), for an aggravating role in the offense. As such, this Court should deny/overrule the governments Objection to the Presentence Investigation Report.

If this Court overrules the government's objection, Mr. Ajak's Sentencing Guideline range will remain 46 to 57 months.

**I. Peter Ajak was not an organizer or leader of the weapons export scheme.**

Ajak in no way is trying to minimize his participation in this case and stands by the factual basis contained in his plea agreement which only reflects his involvement in the conspiracy. In their objection, the government makes no mention of the length of the conspiracy, the conduct of other co-conspirators, nor the date upon which Mr. Ajak entered the conspiracy. All of which are factors this Court should consider when examining the role of Mr. Ajak. According to the Guidelines, the Court should consider a defendant's, "decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over other." U.S.S.G. § 3B1.1(c), cmt. 4.

Examining those factors, it is important to note that Ajak did not become involved in the conspiracy to export weapons to South Sudan until November of 2023. At the earliest, any evidence of his knowledge and willingness can only be traced to October of 2023. (PSR at ¶¶ 12, 13.) Ajak did not initiate the objective of the conspiracy. For years he had advocated nothing but democracy through peace. He was not the recruiter but was recruited to become part of an ongoing operation that

KURT M. ALTMAN, P.L.C.
12621 N TATUM BLVD., #102
PHOENIX, AZ 85032
(602) 689-5100

included people on multiple continents. Undercover agents had been pursuing and in communication with individuals affiliated with South Sudanese opposition groups looking to acquire ammunition and weapons since 2021. (PSR at ¶ 10.) In February of 2023, Abraham Keech, various members of South Sudanese opposition groups which included former military generals contacted undercover agents to discuss obtaining weapons and ammunition for South Sudanese opposition members. (PSR at ¶ 10.) Peter Ajak was not yet involved in any such conspiracy which started in 2021 and began to gain steam in February of 2023.

To argue that Mr. Ajak oversaw nearly every aspect of the weapons export scheme ignores the evidence of the ongoing activity years prior to Mr. Ajak's entry. It also ignores the fact of the necessary participation of other charged and mostly uncharged co-conspirators. Although as of November 2023, Mr. Ajak was a willing participant, the direction of the scheme was not his to navigate. The machine was being driven by those in the background. Ajak's Motion to Dismiss for Selective Prosecution (DKT 87) details the involvement of several uncharged co-conspirators that were essential to the recruiting, planning, concealing, and execution of the weapons purchase. Ajak became part of those conversations but did not direct them. Mr. Ajak did not recruit the funder for the project, a co-conspirator did. He did not devise a plan to conceal the source of the money, a co-conspirator did. Mr. Ajak attending planning and strategy meetings coordinated not by him, but by another co-conspirator who used her office as the setting. False contracts were drafted. Bank transfers were arranged. All these activities were directed by others, not Mr. Ajak. Was he part of the conspiracy after November of 2023? Certainly. Did he control it? Certainly not.

Notably, in a conspiracy that had its origins in 2021, upon Mr. Ajak's arrest on March 1, 2024, his involvement spanned barely four months. (PSR at ¶¶ 9-30.) Mr. Ajak is better categorized as a useful, but sacrificial pawn, rather than leader.

KURT M. ALTMAN, P.L.C.
12621 N TATUM BLVD., #102
PHOENIX, AZ 85032
(602) 689-5100

## II. Mr. Ajak's participation was not to benefit himself.

The government argues, "[D]efendant likely was the key decision-maker because he had the most to gain from the operations success." (Gov't Objection to PSR DKT 170 at p. 7.) To claim that Peter Ajak participated in the present conspiracy to benefit himself illustrates a fundamental misunderstanding of the dire conditions in South Sudan and a flawed portrait of Mr. Ajak.

On July 9, 2011, appointed President Salva Kiir of South Sudan declared his country's independence, officially seceding from Sudan. In response President Barack Obama said "I am proud to declare that the United States formally recognizes the Republic of South Sudan as a sovereign and independent state . . . Today is a reminder that after the darkness of war, the light of a new dawn is possible." *Obama Grants Recognition of South Sudan*, REUTERS, Jul. 9, 2011, *available at* https://www.reuters.com/article/us-sudan-usa-obama/obama-grants-u-s-recognition-of-south-sudan-

A few days later, the United Nations recognized South Sudan as the 193rd country in the world. *UN Welcomes South Sudan as 193rd Member State*, UNITED NATIONS, Jul. 14, 2011, *available at* https://news.un.org/en/story/2011/07/381552.

South Sudan had won its independence in a referendum in January 2011, where 99.57% of those polled voted for secession. That vote was the climax of the 2005 peace deal that ended decades of civil war with the North. *South Sudan Referendum: 99% Vote for Independence*, BBC NEWS, Jan. 30, 2011, *available at* https://www.bbc.com/news/world-africa-12317927.

But more than a decade later, and despite the U.S. having spent more than $15 billion in foreign assistance to support this transition, the aspirations of the people of South Sudan to live in a free and democratic country that respects the fundamental human rights of all its citizens have been crushed. To understand the depth and gravity of the suffering of the South Sudanese

KURT M. ALTMAN, P.L.C.
12621 N TATUM BLVD., #102
PHOENIX, AZ 85032
(602) 689-5100

people today, all one needs to do is understand how South Sudan has been ranked in various thematic global ranking systems by respected independent organizations:

• South Sudan ranks last of 163 countries reviewed by the Social Progress Imperative's 2020 Social Progress Index, which provides an overall ranking based on the evaluation of countries across 12 categories and 50 distinct indicators. *2020 Social Progress Index: South Sudan*, SOCIAL PROGRESS IMPERATIVE, Dec. 1, 2020, *available at* https://www.socialprogress.org.

• According to the World Bank, South Sudan "remains among the poorest countries in the world." Four out of five South Sudanese live below the international poverty line of $1.90 per day. It further notes "hyperinflation, high debt burden, distortions in the foreign exchange rate market, challenges in budget execution, as well as sub-national conflict further exacerbate the situation." *South Sudan Economic Analysis Shows Growth Promise Amid Fragility*, WORLD BANK, Apr. 2, 2020, *available at* https://www.transparency.org/en/cpi/2020/index/ssd.

• South Sudan is ranked third of 178 countries, behind only Yemen and Somalia, in the Fund for Peace's 2020 Fragile States Index, which provides rankings based on 12 indicators across four thematic areas. *2020 Fragile States Index*, FUND FOR PEACE, May 13, 2020, *available at* https://fragilestatesindex.org/data/.

• Freedom House describes South Sudan as "not free" and ranks the country last among 210 countries and territories in the world in its 2020 Freedom in the World report, giving it an overall score of -2 on a scale of 0 to 100. *2020 Freedom in the World Report*, FREEDOM HOUSE, May 4, 2020, *available at* https://freedomhouse.org/countries/freedom-world/scores?sort=desc&order=Total%20Score%20and%20Status.

• Transparency International ranks South Sudan last, tied with Somalia for that distinction, among 179 countries it has ranked in its 2020 Corruption Perceptions Index. 2020 Corruption Perception Index, TRANSPARENCY INTERNATIONAL, Jan. 28, 2021, *available at* https://www.transparency.org/en/cpi/2020/index/ssd.

So how did this happen? As noted above, Kiir assumed the presidency by appointment and was charged with building democratic institutions that would allow for national elections to be held in 2015. But in December 2013, he and his former vice president Riek Machar plunged the nascent country into a new civil war. Horrific crimes against humanity and war crimes, including tribal massacres and widespread rapes were committed, and nearly 400,000 lives were lost. *Nearly 400,000 'Excess Deaths' Caused by South Sudan War*, ASSOCIATED PRESS, Sept. 26,

KURT M. ALTMAN, P.L.C.
12621 N TATUM BLVD., #102
PHOENIX, AZ 85032
(602) 689-5100

KURT M. ALTMAN, P.L.C.
12621 N TATUM BLVD., #102
PHOENIX, AZ 85032
(602) 689-5100

2018, *available at* https://apnews.com/article/4f5a8681027c4ee7894289c058805b3e. The scheduled elections for 2015 were deferred to 2018, then to 2021, and again to 2022, and to date, they have not taken place and Kiir is still in power. A dozen peace deals have all failed. But almost immediately from independence, Kiir's regime was plagued by rampant corruption, tribalism, and a lack of focus on state and nation building. He also began replicating authoritarian power structures of Omar al-Bashir in Sudan, that the South Sudanese had gone to war to oppose and escape. Most notably among these is the National Security Service (NSS), whose mission has been to maintain Kiir in power, to thwart efforts at achieving a sustainable peace and restoration of democracy to South Sudan, and to engage in grand corruption. To achieve these goals, the NSS was built to be Kiir's personal army. It has an estimated annual budget of $100 million as well as 3,600 officers and 27,350 soldiers.

Although South Sudan has more than 60 tribes of the officers, 77% are Dinka and of the soldiers 93% are Dinka. The Dinka are some 35% of the population, but Kiir is a Dinka nationalist and rather than trying to facilitate peace across the tribes, his top priority has been to maintain Dinka control over South Sudan, its people, and its natural resources. The scale and breadth of the NSS's abuses shock the conscience. Led by General Akol Koor Kuc, the NSS's Internal Security Bureau (ISB) is responsible for a wide array of gross human rights abuses that have been committed systematically and directed against real or imagined political opponents, human rights defenders, civil society activists, and journalists including extrajudicial, summary, or arbitrary executions; enforced or involuntary disappearances; torture; and arbitrary detention. In addition, the NSS controls the South Sudan Relief and Rehabilitation Commission, an "independent" government agency, that oversees the licensing and de-licensing of non-governmental organizations (NGOs). And the NSS controls the South Sudan Media Authority, which superficially is a licensing and regulatory body but in fact is a

tool of repression, censorship, intimidation, and harassment of media organizations and journalists. (*Report on South Sudan: The Case for Sanctioning General Akol Koor Kuc, Co-Authored; Revive South Sudan and Perseus Strategies,* at *5-10; April 2021*.)

This is the country the conspiracy intended to free. After years of advocating for peace and democracy in South Sudan, Peter Ajak joined efforts out of desperation—not for personal gain, but to help liberate the suffering population from the current regime. Ajak was chosen by military leaders on the ground in South Sudan as well as opposition members abroad, including here in the United States, to be a potential "interim" leader to help organize a government and conduct long overdue elections. He was a logical choice. A Dinka himself, he had suffered terrible atrocities at the hands of Kiir, a Dinka dictator. (PSR at ¶¶ 56-59.) This mattered because the massive population of Dinka in Kiir's government feared retaliation from other tribes. Mr. Ajak being Dinka alleviated many of those fears. His wife since 2009 is Nuer, another large but different South Sudanese ethnic group. Being part of another large ethnic group by marriage helped build trust amongst those who have suffered greatly under Kiir's Dinka rule. In addition, Mr. Ajak had a history of peace activism in South Sudan, working with other tribal and ethnic groups throughout the nation. He was the logical choice to build trust amongst the different factions in the nation. Also, Mr. Ajak had a unique relationship with the U.S. Government that would give the new government legitimacy and much needed assistance. He was internationally recognized and respected and was chosen as a potential interim leader to help the nation start fresh. His history, his life, his entire existence has been dedicated to the betterment of South Sudan. To ignore that history and claim his involvement in the conspiracy was for personal benefit rings hollow and is without merit.

KURT M. ALTMAN, P.L.C.
12621 N TATUM BLVD., #102
PHOENIX, AZ 85032
(602) 689-5100

**III. Conclusion:**

For the reasons stated herein, Defendant Peter Biar Ajak, respectfully requests that the Court deny/overrule the United States' Objection to Draft Presentence Investigation Report. Should the Court do so, the final guideline range, after acceptance would be a total offense level of 23; with a criminal history category of I, resulting in a Guidelines range of 46-57 months as currently reflected in the Draft Presentence Investigation Report.

RESPECTFULLY SUBMITTED this 7tht day of October 2025.

**KURT M. ALTMAN, P.L.C.**

*/s/ Kurt M. Altman*___________
Kurt M. Altman
*Attorneys for Defendant*

I hereby certify that on the 7th day of October 2025,

I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Honorable Steven P. Logan
United States District Court Judge
logan_chambers@azd.uscourts.gov

Amy Chang
Assistant United States Attorney
Amy.Chang@usdoj.gov

Raymond Woo
Assistant United States Attorney
Raymond.Woo@usdoj.gov

M. Bridget Minder
Assistant United States Attorney
Bridget.Minder@usdoj.gov

Jonathan P. Spano
U.S. Probation Officer
Jonathan_Spano@azd.uscourts.gov

By: */s/ Kurt M. Altman*________

KURT M. ALTMAN, P.L.C.
12621 N TATUM BLVD., #102
PHOENIX, AZ 85032
(602) 689-5100